No. 94-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

HOWARD HICKINGBOTHAM and SANDRA
HICKINGBOTHAM, husband and wife,

     Plaintiffs, Appellants
     and Cross-Respondents,

   V

PAT DUNCAN, an individual,

     Defendant, Respondent and
     Cross-Appellant,

    v.

ASH-WATKINS INCORPORATED, a Montana
corporation, GASPARD W. DESCHAMPS, JR.,
an individual d/b/a DESCHAMPS INDUSTRIES,
and MICHAEL E. SELL, d/b/a C & M PAINTING,

     Defendants

**FILED**

**JUL 06 1995**

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:    District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

       CHRISTOPHER B. SWARTLEY, DATSOPOULOS, MacDONALD & LIND,
       Missoula, Montana
     For Respondent:

       MICHAEL SOL, SOL & WOLFE, MISSOULA, MONTANA

---

             Submitted on Briefs:  May 11, 1995

                    Decided:  July 6, 1995

Filed:

Chief Justice J. A. Turnage delivered the Opinion of the court.

Howard and Sandra Hickingbotham appeal the decision of the Fourth Judicial District Court, Missoula County, amending its original findings of fact and conclusions of law. Pat Duncan cross-appeals the decision of the District Court ordering him to pay the Hickingbothams' attorney fees. We affirm in part and reverse in part.

We find the following issues dispositive:

1. Did the District Court err in amending its original findings of fact, conclusions of law and judgment?

2. Did the District Court err in failing to find that Duncan had committed either actual or constructive fraud?

3. Did the District Court err in awarding attorney fees to the Hickingbothams?

Duncan owned a tract of land in Missoula County, Montana (Tract 1-A). In December 1990, the Hickingbothams purchased a portion of Tract 1-A (Tract 1-A-1) on which they planned to build a home. In exchange for $23,000, Duncan executed a warranty deed transferring title to Tract 1-A-1 to the Hickingbothams.

While the Hickingbothams were planning their home, they discovered that Tract 1-A-1 was not large enough to accommodate their building plans. They therefore sought to purchase an additional portion of Tract 1-A (Portion A) to thus enlarge the total size of their lot. The Hickingbothams negotiated with Duncan the purchase of additional adjoining land for a purchase price of

$10,000.  The parties' negotiations culminated in the execution of a Receipt and Agreement to Sell and Purchase dated May 17, 1991.

During this same period of time, Duncan was having a house constructed on his remaining portion of Tract 1-A.  He contracted with Ash-Watkins to construct a home  for $100,000.  A dispute ensued over construction costs incurred in building Duncan's home.  Ash-Watkins sought additional money above and beyond the $100,000 negotiated construction  price,  but Duncan refused to pay the increased amount.  On June 6, 1991, Ash-Watkins filed a construction lien against Tract 1-A, including Tract 1-A-1 which had been purchased by the Hickingbothams and Portion A which the Hickingbothams were negotiating to purchase.  The Hickingbothams claim that Duncan knew or should have known that Ash-Watkins would encumber Tract 1-A-1 and Portion A when he did not settle his construction debt.

On June 19, 1991,  the Hickingbothams  tendered payment  for Portion A.  Duncan refused to accept because he could not convey clear title to the property due to the Ash-Watkins construction lien.

Pursuant to a court order, Ash-Watkins released the construction lien on Tract 1-A-1.  The lien on the remainder of Tract 1-A, including Portion A, was not released.  The Hickingbothams have since rescinded their offer to purchase Portion A.  The Hickingbothams likewise sold Tract 1-A-1 in August of 1992 for a $17,000 profit.

The Hickingbothams filed suit against Duncan, claiming that he breached the covenants contained in the warranty deed to Tract 1-A-1 by allowing the construction liens to be placed on the property and that he breached the Receipt and Agreement to Sell and Purchase Portion A signed on May 17, 1991, by failing to convey Portion A to them.

Following a bench trial, the District court issued its findings of fact, conclusions of law and judgment. The court found that Duncan had breached the express warranty against encumbrances as well as implied covenants contained in the Tract 1-A-1 warranty deed. The court also found that Duncan breached the terms of the Receipt and Agreement to Sell and Purchase Portion A by failing to deliver title to the property to the Hickingbothams upon their tender of payment. The court found Duncan and Ash-Watkins jointly and severally liable for over $29,000 in damages, plus interest.

Duncan moved the court to amend its findings of fact and conclusions of law. Following briefing, the court granted Duncan's motion and amended its initial findings of fact and conclusions of law.

In its amended findings of fact and conclusions of law, the court determined that Duncan had not breached the express and implied covenants contained in the warranty deed to Tract 1-A-1. The court reasoned that, pursuant to the terms of the warranty deed, Duncan promised to defend the Hickingbothams from all lawful claims against the property. The court determined that the Ash-Watkins lien was unlawful and held in Duncan's favor in their

4

construction dispute. Therefore, Duncan had no obligation to defend the Hickingbothams from such an unlawful claim.

The court also amended its ruling as to the Receipt and Agreement to Sell and Purchase Portion A. In its amended findings of fact and conclusions of law, the court determined that the only damages available pursuant to the terms of the Receipt and Agreement to Sell and Purchase was the return of the purchasers' earnest money. Because no money had been exchanged, no other damages were available.

The Hickingbothams appeal the District Court's amended findings of fact, conclusions of law and judgment. Duncan cross-appeals the District Court's award of attorney fees to the Hickingbothams. We affirm in part and reverse in part.

Issue 1

Did the District Court err in amending its original findings of fact, conclusions of law and judgment?

We review trial court rulings such as a ruling on a motion to amend findings of fact, conclusions of law and judgment to determine whether the district court abused its discretion. Montana Rail Link v. Byard (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. We will not overturn a district court's findings of fact unless they are clearly erroneous. Columbia Grain International v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678. We review a district court's conclusions of law to determine if its interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

5

A district court may amend or alter its findings of fact, conclusions of law and judgment pursuant to Rule 59(g), M.R.Civ. P. Rule 59(g) states:

> A motion to alter or amend the judgment shall be served not later than 10 days after the service of the notice of the entry of the judgment, and may be combined with the motion for a new trial herein provided for. This motion shall be determined within the time provided hereinabove with respect to a motion for a new trial and if the court shall fail to rule on the motion within the 45 day period, the motion shall be deemed denied.

The Hickingbothams raise no procedural challenges to the District Court's granting of Duncan's motion to amend, and a review of the record reveals no procedural error. Likewise, the Hickingbothams fail to allege that the court's amended findings are not supported by substantial credible evidence or that the amended conclusions are incorrect. The Hickingbothams' primary argument arises from the court's failure to address the issue of fraud in its findings of fact, conclusions of law and judgment. Because we treat this as a separate issue below, we will address it in no further detail here

We conclude that the District Court did not abuse its discretion in granting Duncan's motion to amend the findings of fact and conclusions of law. The court's amended findings of fact are not clearly erroneous. Likewise, the court's amended conclusions of law are correct

Issue 2

Did the District Court err in failing to find that Duncan had committed either actual or constructive fraud?

6

The Hickingbothams sued Duncan for breach of contract and breach of warranty. At the close of trial, the Hickingbothams moved the District Court to amend the pleadings to conform to the evidence to include a claim for fraud. The District Court granted the motion over Duncan's objection. However, the District Court did not determine in its amended findings of fact and conclusions of law that Duncan had committed fraud.

The Hickingbothams allege that Duncan committed actual fraud by executing the Receipt and Agreement to Sell and Purchase Portion A while knowing that an impending construction lien by Ash-Watkins was imminent. The Hickingbothams claim that Duncan misrepresented material facts concerning the future marketability of Portion A and that such representations were justifiably relied upon.

We have set forth the elements that must be established in order to prove the existence of actual fraud as follows:

1.  a representation;
2.  its falsity;
3.  its materiality;
4.  speaker's knowledge of the falsity or ignorance of its truth;
5.  speaker's intent that the representation be relied upon;
6.  hearer's ignorance of the falsity;
7.  hearer's reliance on the representation;
8.  hearer's right to rely on the representation; and
9.  hearer's consequent and proximate injury caused by the reliance.

Barrett v. Holland and Hart (1992), 256 Mont. 101, 106, 845 P.2d 714, 717.

Duncan agreed to sell Portion A to the Hickingbothams on May 17, 1991. Prior to May 17 Duncan had paid Ash-Watkins over $104,000 on the agreed upon construction price of $100,000. Duncan

also knew that Ash-Watkins was seeking an additional $34,000. However, Duncan believed that he owed Ash-Watkins no more money for the construction of his home. Subsequent litigation proved Duncan to be correct.

On May 17, 1991, when Duncan executed the Receipt and Agreement to Sell and Purchase Portion A, there were no construction liens against his property and he had a clear and marketable title to Portion A. Despite the ongoing dispute with Ash-Watkins, Duncan could not have been reasonably expected to foresee the unjust and unwarranted filing of a construction lien against his property. Therefore, any representations made by Duncan on or before May 17, 1991, concerning the clear title and marketability of Portion A were not false representations.

The Hickingbothams also contend that Duncan committed constructive fraud. Section 28-2-406, MCA, defines constructive fraud as:

> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Duncan had no duty to warn the Hickingbothams about a potential, yet unfiled, warrantless and wrongful construction lien. As discussed above, despite Ash-Watkins' dispute over construction costs, Duncan cannot be charged with foreseeing that an unjustified construction lien would be filed upon his property

Secondly, the record reveals no advantage gained by Duncan by entering into the Receipt and Agreement to Sell and Purchase Portion A. Duncan accepted no money for the parcel, nor did he gain any other advantage by entering into the agreement

We conclude that the District Court did not err in failing to find that Duncan had committed actual or constructive fraud.

Issue 3

Did the District Court err in awarding attorney fees to the Hickingbothams?

Attorney fees are not an element of damages unless expressly provided for by statute or contract. Ehly v. Cady (1984), 212 Mont. 82, 687 P.2d 687. In its amended conclusions of law, the District Court determined that Duncan was liable to the Hicking-bothams for $781 in attorney fees. The court awarded the attorney fees pursuant to § 27-1-314, MCA, as fees incurred in attempting to remove the liens from Portion A in anticipation of purchase

Section 27-1-314, MCA, reads:

> Breach of agreement to convey real property. The detriment caused by the breach of an agreement to convey an estate in real property is considered to be the price paid and <u>the expenses properly incurred in examining the title and preparing the necessary papers</u>, with interest thereon. If the breach was in bad faith and the agreed price was less than the value of the estate; the detriment is also considered to include the difference between the agreed price and the value of the estate at the time of the breach and the expenses properly incurred in preparing to enter upon the land. [Emphasis added.]

The $781 award of attorney fees was not made in relationship to a title search. Duncan was ordered to pay the Hickingbothams $125 for title search costs, an award that Duncan does not contest. The

9

additional $781 was not a title search expenditure nor an expenditure properly incurred in preparing to enter upon the land and therefore was not provided for under § 27-1-314, MCA. The Hickingbothams have failed to establish that attorney fees under this scenario are provided by any other code section.

Neither does the Agreement to Sell and Purchase Portion A provide for an award of attorney fees; rather, it provides, as the sole remedy, the return of money paid to Duncan by the Hickingbothams. Because the Hickingbothams had paid Duncan no money, no money was therefore returned.

We conclude that the District Court misinterpreted § 27-1-314, MCA, as providing for an award of attorney fees in favor of the Hickingbothams. We hold that Duncan is not liable for attorney fees to the Hickingbothams.

We affirm in part and reverse in part the decision of the District Court.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

July 6, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael Sol
SOL & WOLFE
300 Montana Building
101 E. Broadway
Missoula MT 59802

Christopher B. Swartiey, Esq.
DATSOPOULOS, MacDONALD & LIND, P.C.
201 W. Main, Suite 201
Missoula MT 59802

Harold Van Dye, Esq.
Dye Law Office
430 Ryman
Missoula MT 59802-4208

William T. Wagner, Esq.
GARLINGTON, LOHN & ROBINSON
Box 7909
Missoula MT 59807-7909

David E. Stenerson
Attorney At Law
Box 1667
Hamilton MT 59840-1667

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy