No. 97-148

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

MERRILL KLUNDT, Special administrator
of the Estates of William G. Klundt,
deceased, and Renada Klundt, deceased,

Plaintiff and Appellant,

v.

ADELINE ADOLPH,

Defendant and Respondent.

FILED

AUG 14 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles F. Moses, Billings, Montana

For Respondent:

Gary L. Beiswanger, Billings, Montana

Submitted on Briefs: June 19, 1997

Decided: August 14, 1997

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c) of the Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Merrill Klundt appeals the findings of facts, conclusions of law and judgment entered by the Thirteenth Judicial District Court, Yellowstone County, determining that the property transfer of William and Renada Klundt to their daughter Adeline Adolph was valid and was not the product of fraud or undue influence, finding that Adeline did not manage her parents' financial affairs and did not hold a fiduciary relationship with them, and refusing to impose a constructive trust. We affirm.

## ISSUES

The issues on appeal, as framed by the Court, are:

1.     Are the District Court's findings that Adeline did not manage the financial affairs of her parents and did not occupy a fiduciary relationship with them clearly erroneous?

2.     Did the District Court err in holding that the transfer of property and accounts was not the product of undue influence?

3.     Did the District Court err in holding that Adeline did not commit actual or constructive fraud when assisting her parents with their financial affairs?

2

4.     Did the District Court err when it failed to impose a constructive trust upon the property of the deceased parents?

5.     Did the District Court err in holding that Adeline was not merely an accommodation party concerning the placement of her name on joint accounts with her parents and that the creation of the joint accounts passed ownership to Adeline upon their death?

## THE FACTS

This case involves a dispute over the estates of William and Renada Klundt. William Klundt died in 1986 and Renada Klundt died in 1991. At the time of their deaths, they had five living children, including the plaintiff/appellant Merrill Klundt (Merrill), respondent/defendant Adeline Adolph (Adeline), Verlyn Klundt (Verlyn), Orville Klundt (Orville), and Verdie Smith (Verdie).

The District Court found that the family relationship between William and Renada and most of their children was strained. William and Renada had no relationship at all with Merrill for many years after 1953, when Merrill married a woman of whom they disapproved. Even after Merrill divorced his wife, his relationship with his parents remained strained until their death. He took his two living children to visit William and Renada only twice.

William and Renada similarly had no relationship with their son Orville for 13 or 14 years after 1953, apparently because Orville had taken Merrill's side in the family dispute

over Merrill's marriage. Although Orville enjoyed a good relationship with his parents after 1968, he lived in Great Falls, Montana, and did not often visit his parents, who lived in Billings, Montana.

Verlyn lived in California for most of his adult life. His relationship with his parents was cordial, but they did not visit frequently due to distance and circumstances.

Verdie did not have a close relationship with her parents. In 1969, she moved to the Whitefish, Montana, area. She visited her parents only occasionally. Her parents visited her once, but never returned for another visit.

In contrast to her siblings, Adeline enjoyed a close, loving relationship with her parents. Although she lived out-of-state from 1958 to 1969, she and her husband have lived in Billings since 1969. Adeline and her family spent almost every Christmas, Thanksgiving and Easter holiday with her parents. As William and Renada aged, Adeline assisted them with personal matters and helped them shop, go to doctor's appointments, secure prescription drugs and other such matters. Her children also had a close relationship with William and Renada. Adeline and her family visited them very often after they entered St. John's Nursing Home in 1985.

On March 4, 1959, William and Renada executed wills. Because of the dispute over Merrill's first wife, they disinherited both Merrill and Orville. They devised their estates, upon their death, to Verlyn, Verdie and Adeline.

4

In June 1984, William and Renada told Adeline that they wanted her to become a joint tenant owner with right of survivorship of their investments. They wanted Adeline to have their remaining property upon their death. Accordingly, they added Adeline's name as a joint tenant with right of survivorship to their accounts at various financial institutions. They also added her name as a signatory to a safety deposit box and as a joint owner on certificates of deposit.

On March 17, 1986, William and Renada sold their house for approximately $38,600. They deposited the money into a joint account in the names of William, Renada and Adeline. That money was later invested in a mutual fund account in joint tenancy between Renada and Adeline. On October 4, 1986, William died.

In March 1991, the residue of the funds received from the sale of the house, which amounted to approximately $37,000, remained in a joint tenant account held by Renada and Adeline. Renada transferred those funds to Adeline as a gift, telling Adeline that rather than paying it all to the nursing home, she wanted Adeline to have something for all the years she had helped William and Renada. Renada died on December 22, 1991.

Following Renada's death, Merrill caused himself to be appointed as Special Administrator of his parents' estates. He brought suit against Adeline, seeking to impose a constructive trust upon the estates of his parents, and seeking an accounting from Adeline of all their property. He alleged that Adeline obtained their parents' property through fraud

or undue influence. After a non-jury trial, the District Court entered judgment in favor of Adeline. Merrill appeals.

## STANDARD OF REVIEW

The standard of review of a district court's findings of fact is whether they are clearly erroneous. In re Estate of Hill (Mont. 1997), 931 P.2d 1320, 1323, 54 St.Rep. 101, 102 (citing In re Estate of Parini (1996), __ Mont. ___, ___, 926 P.2d 741, 743). This Court reviews a district court's conclusions of law to determine whether the court's interpretation of the law was correct. In re Hill, 931 P.2d at 1323 (citing In re Parini, 926 P.2d at 743).

## ISSUE ONE

Are the District Court's findings that Adeline did not manage the financial affairs of her parents and did not occupy a fiduciary relationship with them clearly erroneous?

Merrill argues that the District Court erred when it found that Adeline did not manage or handle the financial affairs of her parents and was not a fiduciary or trustee with respect to their estates. The District Court found that Adeline began providing assistance to William and Renada after December 1984, by providing them with financial information and carrying out certain financial requests. For example, Adeline discussed interest rates with Renada and suggested, when it was appropriate, to make changes in investments based upon increases in interest rates. However, Renada was interested in interest rates and observed for herself the advertisement of such rates. Adeline also helped write checks to pay William's and Renada's bills. Some checks were written completely by Renada. Others were written by

6

Adeline and signed by Renada. Some were written and signed by Adeline to pay bills of Renada from the joint account.

Merrill does not dispute these facts. Instead, he points to William's and Renada's applications to live at St. John's Nursing Home in support of his argument. In 1984, William and Renada had decided to move to the nursing home. The plan to change residence to the nursing home was that of William and Renada, and not the idea of Adeline. Adeline went with her parents to the nursing home to prepare the applications dated December 28, 1984. She helped her parents make out the forms by writing in information obtained from William and Renada. Adeline's name and address was placed in two blanks after the statement "Name of person who will handle your financial and personal affairs." The District Court attributed little significance to these notations in light of the undisputed facts and the manner in which Adeline actually assisted her parents. This Court agrees. The District Court was correct in concluding that Adeline merely assisted her parents and helped carry out their requests and wishes. The District Court's findings that Adeline did not handle her parents' financial affairs and was not a fiduciary or trustee were not clearly erroneous.

## ISSUE TWO

Did the District Court err in holding that the transfer of property and accounts was not the product of undue influence?

Merrill seeks to have the property transfers to Adeline set aside, claiming they were the result of undue influence. Specifically, he claims that William and Renada were mentally

7

incompetent. He claims that Adeline breached a fiduciary relationship and obtained an unfair advantage over her parents due to their weakness of mind. As already established, Adeline did not have a fiduciary relationship with her parents. With respect to undue influence, § 28-2-407, MCA, provides:

> Undue influence consists in:
> (1)     the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him;
> (2)     taking an unfair advantage of another's weakness of mind; or
> (3)     taking a grossly oppressive and unfair advantage of another's necessities or distress.

This Court, in In re Estate of Tipp (Mont. 1997), 933 P.2d 182, 54 St.Rep. 90, set forth the criteria the court must consider to find undue influence. The five criteria are:

> (1)     the confidential relationship of the person allegedly attempting to influence the testator;
> (2)     the physical condition of the testator as it affects his or her ability to withstand influence;
> (3)     the mental condition of the testator as it affects his or her ability to withstand the influence;
> (4)     the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and
> (5)     the demands and importunities as they may have affected the testator, taking into consideration the time, place, and surrounding circumstances.

In re Tipp, 933 P.2d at 184 (citing In re Estate of Jochems (1992), 252 Mont. 24, 28, 826 P.2d 534, 536). For undue influence to exist, the plaintiff must prove there was a destruction of free agency. Matter of Estate of Hogan (1985), 218 Mont. 428, 431, 708 P.2d 1018, 1020.

The second and third criteria relate to the physical and mental condition of William and Renada. The District Court found that there was insufficient evidence to justify a finding

8

that either William or Renada was mentally incompetent. At the time that William and Renada transferred their property to joint ownership with Adeline in June 1984, William had no ailments that affected him mentally. It was not until May 15, 1985, after the property had already been transferred to joint ownership, that William suffered a stroke. Although he suffered some memory loss, a nurse at St. John's testified that he knew what he was doing. We conclude that the District Court was not clearly erroneous in finding that there was no evidence that William was incompetent either then or at the time that the significant events occurred in 1984. No evidence supports a finding either that his physical or mental condition rendered him susceptible to undue influence in 1984 or that Adeline exerted any such influence.

Renada similarly had the mental capacity to make financial decisions until her death. Although she had a heart attack in 1983, the District Court found no evidence that this affected her mental competence. She became a resident of St. John's Nursing Home in 1985. From then until the date of her death in 1991, her treating physician never observed any mental deterioration. He testified that neither her physical conditions nor her medication affected her ability to make financial decisions. Two of her nurses similarly testified that she was mentally competent until her death. We find that the District Court did not err when it found she had the mental capacity to understand what she was doing, both at the critical time in 1984 when the joint accounts were created and in 1991 when she made the gift to Adeline.

The fourth criteria is the unnaturalness of the disposition as it relates to showing an

9

unbalanced mind or a mind easily susceptible to undue influence. The fact that the transfer of assets into joint accounts with Adeline and the subsequent gift to Adeline resulted in the exclusion of the other siblings from receiving any of the parents' assets is not in and of itself unnatural. Matter of Estate of Lien (1995), 270 Mont. 295, 305, 892 P.2d 530, 536. Indeed, as far back as 1959, decades before Merrill contends that his parents were incompetent or susceptible to undue influence, his parents entirely disinherited him and his brother. Consideration of the transfers to Adeline in light of the fifth criteria indicates why the transfers were not unnatural. In this case, the parents had a close relationship with Adeline, who assisted them with their various needs. In contrast to this close relationship, the parents had little or no relationship with the remaining children. Under these circumstances, the transfer of all assets to Adeline was not unnatural. The District Court was correct in finding that the transfer of assets was not the product of undue influence.

## ISSUE THREE

Did the District Court err in holding that Adeline did not commit actual or constructive fraud when assisting her parents with their financial affairs?

Merrill claims that Adeline committed actual or constructive fraud. In Hickingbotham v. Duncan (1995), 271 Mont. 525, 898 P.2d 1215, we set forth the elements that a plaintiff must prove to establish actual fraud:

1. a representation;
2. its falsity;
3. its materiality;
4. speaker's knowledge of the falsity or ignorance of its truth;

10

5. speaker's intent that the representation be relied upon;
6. hearer's ignorance of the falsity;
7. hearer's reliance on the representation;
8. hearer's right to rely on the representation; and
9. hearer's consequent and proximate injury caused by the reliance.

Hickingbotham, 898 P.2d at 1218 (citing Barrett v. Holland and Hart (1992), 256 Mont. 101, 106, 845 P.2d 714, 717). The District Court found that Merrill failed to prove any of the nine elements to establish actual fraud. On appeal, Merrill fails to reference any record evidence that would support any of the nine elements. For example, he fails to point to any evidence that a "representation" was made. Moreover, he fails to specify how the District Court erred. Under these circumstances, we cannot conclude that the District Court erred.

To establish constructive fraud, a plaintiff must prove:

(1) any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Section 28-2-406, MCA; Hickingbotham, 898 P.2d at 1218-19. The District Court found that none of Adeline's actions in assisting her parents constituted constructive fraud. Moreover, as already established, Adeline did not have a fiduciary relationship with them. Merrill has again failed to specify any record evidence that would establish constructive fraud, and he has failed to specify the manner in which the District Court erred. We hold that the District Court did not err when it found that Adeline did not commit either actual or constructive fraud.

11

## ISSUE FOUR

Did the District Court err when it failed to impose a constructive trust upon the property of the deceased parents?

Merrill urges that the District Court should have imposed a constructive trust upon his parents' estates. Section 72-33-219, MCA, defines constructive trust:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

Courts impose constructive trusts because of "'fraud, mistake, undue influence, the violation of a trust, or other wrongful acts' to work an equitable result." In re Marriage of Owen (1990), 244 Mont. 306, 309, 797 P.2d 226, 228 (citing In re the Marriage of Malquist (1988), 234 Mont. 419, 422, 763 P.2d 1116, 1118). We have already concluded that the District Court did not err in finding that the property transfers were not a result of undue influence or fraud. The record is devoid of any evidence of wrongdoing requiring such a remedy. We conclude that the District Court did not err in refusing to impose a constructive trust.

## ISSUE FIVE

Did the District Court err in holding that Adeline was not merely an accommodation party concerning the placement of her name on joint accounts with her parents and that the creation of the joint accounts passed ownership to Adeline upon their death?

Having failed to show fraud or undue influence, Merrill next contends that the transfer of the accounts to joint ownership was merely to enable Adeline to serve as an

12

accommodation party. In connection with this argument Merrill contends that the creation of the joint accounts was not valid because his parents lacked the donative intent to make a gift. The District Court found that the creation of the joint accounts was the method William and Renada used to transfer ownership of their property to Adeline. William and Renada told Adeline they wanted her to become a joint tenant so she could have their remaining money after they died. The three then went to the various financial institutions where they made the changes to the accounts and Adeline signed the signature cards. Both William and Renada understood the form of ownership of assets as joint tenants with right of survivorship and the employees of the financial institutions explained to William and Renada the nature of the joint tenancy accounts. When the employees told them that the assets would belong to Renada and Adeline if William should die and then to Adeline if Renada should die, both indicated that that was exactly what they wanted.

Merrill points to no evidence which would show that, in fact, Adeline did not sign the signature cards or that William and Renada lacked a donative intent. He fails to indicate how the District Court's findings are clearly erroneous or establish that the District Court erred as a matter of law. We affirm the District Court's findings.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

13

Karla M. Gray

W. William Leaphart

Justices

14

August 14, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

CHARLES F. MOSES, ESQ.
MOSES LAW FIRM
PO BOX 2533
BILLINGS MT  59103-2533

Gary L. Beiswanger
Attorney at Law
PO BOX 20562
BILLINGS MT 59104-0562

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy