No. 88-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

IN RE THE MARRIAGE OF
DALE H. MALQUIST,

~~Petitioner~~ and Appellant,
*Respondent*

and

SANDY J. MALQUIST,

~~Defendant~~ and Respondent.
*Petitioner*

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dale M. Malquist, pro se, Lincoln, Montana

For Respondent:

Dennis G. Loveless, Helena, Montana

---

Submitted on Briefs:  Sept. 23, 1988

Decided:  November 1, 1988

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Dale H. Malquist appeals from the findings of fact and conclusions of law entered by the District Court of the First Judicial District, Lewis and Clark County after remand by this Court, in In re the Marriage of Malquist (Mont. 1987), 739 P.2d 482, 44 St.Rep. 1193, for further findings in this dissolution of marriage case. Upon remand, the District Court found that the family home and surrounding 20.1 acres were not part of a trust and thereafter awarded such property to Sandy J. Malquist. We affirm.

Appellant raises the following issues upon appeal:

1. Whether the District Court erred in finding that the house and surrounding acreage were not part of the irrevocable trust?

2. Whether the District Court abused its discretion by making findings of fact and conclusions of law on issues not remanded for further findings?

3. Whether the District Court abused its discretion by making findings of fact and conclusions of law which substantially altered the Montana Supreme Court's judgment?

On November 3, 1986, the District Court issued a decree dissolving the seventeen-year marriage of Dale and Sandy Malquist. The court awarded the family home and surrounding 20.1 acres to Sandy. Dale filed an appeal on November 21, 1986. He contended that the court could not award the disputed property to Sandy because it was held in trust for the benefit of the two Malquist children. In July of 1987, this Court remanded the case for further findings on the

2

terms of the trust and for support of the distribution of trust fund property.

To briefly summarize the facts, the trust fund which is the subject of this appeal was established by an irrevocable written trust agreement signed September 12, 1984. The trust agreement named Sandy as the settlor, Anne Rowlins and Daryl Malquist as trustees with the responsibility of administering the trust, and Dale and the two children as beneficiaries. The agreement expressly stated that the trust contained all property itemized on the Schedule A attached to the agreement. Sandy subsequently typed up and affixed Schedule A to the agreement in January of 1985.

The attached schedule listed only a 1977 Chevrolet Blazer and a checking account; no mention was made of the family home and surrounding acreage. Respondent testified that she erroneously listed the home as part of the trust on the 1985 and 1986 fiduciary income tax return filed on behalf of the trust. She did not at any time list the underlying 20.1 acres as part of the trust. Moreover, the Lewis and Clark County Treasurer's Office addressed its notice of taxes assessed on the property to Sandy, and not to the D & S Trust. A trust indenture signed by the parties on November 25, 1983, indicated that Dale had deeded his interest in the property to Sandy. Sandy did not subsequently execute a written assignment of the property to the trust.

Following the remand hearing on December 16, 1987, the District Court upheld the original award of the house and acreage to Sandy. The court found that the trust contained only the 1977 Chevrolet Blazer, a checking account, and Dale's 1984-85 electrical contractor's license. Although the license was not listed on Schedule A of the trust agreement,

3

the license itself specifically named the D & S Trust as the owner. The court further found that Dale had orally disclaimed his interest in the trust during the remand hearing.

The court also ruled on the motions filed by each party prior to the remand hearing. The court ordered Sandy to immediately turn over to the respondent any items of personal property listed in the motion which were still at her residence. However, the court denied respondent's motion that she be held in contempt should she fail to turn over all listed items. Several of the items listed were either missing or had been sold prior to the divorce decree to provide support for herself and the two children while respondent was incarcerated. The court ordered Dale to reimburse petitioner for all monies expended on their children's health care, but denied petitioner's motion that Dale be held in contempt for violating the dissolution decree by failing to pay for medical insurance for the two children and for those medical expenses incurred by them. Judge Honzel reasoned that Dale had been generally unable to pay such expenses because he had failed to secure permanent work following his release from prison.

This appeal followed.

The first issue raised upon appeal questions the sufficiency of the evidence to support the District Court's determination that the house and surrounding twenty acres were not part of the trust. The party who asserts the existence of a trust has the burden of proving its existence and contents by "evidence which is unmistakable, clear, satisfactory and convincing." First Nat'l Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 386, 506 P.2d 835,

4

841. The respondent, as the one asserting that the house and property were part of the trust, thus had the burden of proving that such property was placed in trust.

A trust may be either a voluntary or involuntary trust. A voluntary trust in relation to real property may only be created by an instrument indicating with reasonable certainty the subject, purpose, and beneficiary of the trust and the trustor's intent to create the trust. Section 72-20-107, MCA, § 72-24-102, MCA.

In our case, an existing written trust agreement expressly stated that the 1977 Blazer and checking account were held in the voluntary trust. The court also correctly found that the 1984-85 contractor's license, which expressly listed on its face that the owner was the D & S Trust, constituted a written instrument sufficient to indicate that the parties intended it be held in trust. However, no such clear and convincing evidence exists to indicate that the house and acreage were part of a voluntary trust. Schedule A of the trust agreement fails to list the disputed property. Further, the trust indenture listed Sandy as the owner of the disputed property, and the county addressed its notice for taxes assessed on the property to Sandy.

Respondent similarly failed to prove that the real property in dispute was part of an involuntary trust. An involuntary trust is one which arises by operation of law. Section 72-20-103, MCA. Two kinds of involuntary trusts exist by operation of law: Constructive and resulting. Constructive trusts arise because of fraud, mistake, undue influence, the violation of a trust, or other wrongful acts. Neither party expresses an intent to create a trust and the court does not presume any intent. The court simply "creates

5

the trust to work an equitable result." Eckart v. Hubbard (1979), 184 Mont. 320, 326, 602 P.2d 988, 991. We need not engage in any further discussion of this type of involuntary trust, for the record is virtually silent as to any such fraudulent or wrongful acts which would justify the implication of a constructive trust.

A resulting trust generally arises when:

> [T]he parties have used ambiguous language which the court construes as showing a trust intent, or where the parties have expressed no intent to create a trust by words, but have performed acts from which the court infers that a trust was intended.

Eckart, 602 P.2d at 991. The trust agreement in this case, however, does not contain ambiguous language. It clearly states that the trust includes that property listed on Schedule A. Further, neither party acted in such a way as to indicate that the parties intended the house and surrounding acreage to be held in trust. Dale and Sandy signed a trust indenture deeding the property to Sandy, not to the trust. Sandy, and not the trust, paid the taxes assessed on the property.

The property clearly was not held in a resulting trust, and the house affixed to the property likewise was not included in such a trust. A building permanently affixed to property generally is considered part of the realty and passes with it. See Hauf v. School Dist. No. 1 (1916), 52 Mont. 395, 158 P. 315; see generally §§ 70-15-101, -103, MCA (these sections define "real property" and "affix"). Sandy's unquestionable lawful ownership of the land therefore included ownership of the house affixed to it. We hold that her later inclusion of the house, but not the land, on

6

fiduciary income tax returns filed on behalf of the trust was insufficient to overcome all the evidence demonstrating that the house and land were owned by Sandy and not by the trust.

We will not reverse the District Court's decision unless it is clearly erroneous because it exceeds "the bounds of reason in view of all the circumstances," as it is unsupported by clear and convincing evidence. See, e.g, In re the Marriage of Buxbaum (Mont. 1984), 692 P.2d 411, 42 St.Rep. 2243. In the instant case, sufficient credible evidence existed to support the District Court's determination that the house and land were not part of either a voluntary or involuntary trust. The District Court thus did not err in its findings on this issue.

The second issue raised by appellant is without merit. Appellant contends that the District Court exceeded the scope of issues remanded for hearing when the court determined Dale gave up his interest in the trust. However, the Montana Supreme Court remanded this case for "findings to support the distribution of the trust fund and its assets." Marriage of Malquist, 739 P.2d at 484. The District Court's finding that the appellant voluntarily gave up his interest in the trust supports the decision to then award the trust to respondent.

The third issue raised by appellant is also without merit. Appellant contends that the District Court substantially altered this Court's prior judgment by failing to order respondent to turn over all the items of personal property listed in his motion. New evidence introduced at the remand hearing indicated that several of the items listed by appellant were sold prior to the divorce decree. Consequently, any inclusion of these items in the dissolution decree was improper, as a court only may equitably apportion

7

those properties and assets belonging to the parties.  See § 40-4-202, MCA.  Additionally, this Court notes that the original dissolution decree did not specifically award appellant many of these items listed in his motion.  The District Court thus did not abuse its discretion by ordering respondent to immediately turn over to the appellant those remaining personal items belonging to him.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

8