No. 90-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF DAVID L. OWEN,

            Petitioner and Respondent,

    and

LORI L. OWEN, n/k/a LORI BALLINGER,

            Respondent and Appellant,

    and

LARRY OWEN and MARILYN OWEN,

            Third Party Respondents.

FILED

SEP 4 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Edward McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Paulette C. Ferguson, Missoula, Montana
            Thomas W. Christie, Billings, Montana

        For Respondent:

            Dennis   Lind;   Datsopoulos,   MacDonald   &   Lind;
            Missoula, Montana (petitioner-respondent)

            Portia K. Brown; Morrill, Brown & Thomas; Rapid
            City, South Dakota (third party respondents)


                        Submitted on Briefs:   August 9, 1990

                            Decided:   September 4, 1990

Filed:

_____
                Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District, Missoula County, Montana. On August 10, 1989, the District Court issued a decree dissolving the twelve-year marriage of David Owen and Lori Owen Ballinger. In addition to approving the Family Maintenance Agreement, the District Court held that the residence in which the parties lived during the latter years of their marriage properly belonged to the parents of the husband and denied the wife's request that she be awarded attorney's fees. From this judgment the wife appeals. We affirm.

Appellant presents the following issues:

1. Did the District Court err by failing to include the house purchased by the husband's parents in the marital estate?

2. Did the District Court abuse its discretion by refusing to award the wife attorney's fees?

David Owen and Lori Owen Ballinger were married in 1977. One daughter, now age 12, was born to the marriage. When the couple separated in 1987, they entered into a separation agreement which provided child support and monthly maintenance payments to the wife from that date until six months after she completed law school. The husband assumed all debts of the marriage prior to the date of the agreement. The husband was required to pay the wife's automobile insurance premiums until twelve months after the wife graduated from law school. He agreed to maintain the health insurance policy on the wife and child available through his employment. If his wife became ineligible for such insurance

2

because of divorce, the husband agreed to pay for other health insurance for her until twelve months after completion of law school.

Payment of health insurance aided the wife in meeting expenses incurred in treatment of a rare chronic disease, sarcoidosis, at present controlled by extensive medications. The disease could eventually result in the wife's partial or total disability.

When the husband received custody of the child in December, 1988, he declined to pay further maintenance payments. The wife moved to enforce the terms of the Family Maintenance Agreement. The District Court relieved the husband of child support payments and held that otherwise the agreement was binding and enforceable. The husband and the child reside in the home purchased by his parents.

During the twelve-year marriage the wife contributed primarily as a homemaker. Her financial contribution was not substantial. She completed paralegal training, a B.A. in business, and her first two years of law school by the time of the divorce in August, 1989.

In 1982, the husband's parents purchased a home in which the couple resided until their separation. The couple entered into a written lease agreement with the husband's parents, but made only sporadic payments. By the time of the dissolution, the value of the house had decreased by $15,000. The couple had paid $1,000 of the down payment, but otherwise had nothing invested in the house.

Other than personal property, the couple had no assets. At the time of the dissolution the husband earned a gross monthly

income of $2,954 as Executive Vice-President of the Missoula Chamber of Commerce and an additional $2,000 per year as a part-time basketball referee. The husband testified that his monthly expenses totalled $2,696, an amount approximating his disposable income.

The wife's income consisted of $490 per month maintenance payments plus a variable amount from part-time employment. Her estimated liabilities for loans received in law school totalled $25,000. The District Court found that while the wife's type of legal employment and income were uncertain, her income-producing ability would be greatly enhanced upon her graduation from law school.

## I.

Did the District Court err by failing to include the house purchased by the husband's parents in the marital estate?

The wife urges that the District Court should have imposed a constructive trust on her share of an ownership interest that she claims she and her husband had in their residence, purchased by her husband's parents. As evidence of an ownership interest, she cites the facts that the couple selected the house and handled the negotiations for its purchase. In addition, she and her husband believed that they would have been allowed to use the profits from the sale of the house as a down payment on another house.

Section 72-33-219, MCA, defines constructive trust:

> A constructive trust arises when a person holding title to property is subject to an

4

equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

The courts impose constructive trusts because of "fraud, mistake, undue influence, the violation of a trust, or other wrongful acts" to work an equitable result. In re the Marriage of Malquist (1988), 234 Mont. 419, 422, 763 P.2d 1116, 1118. We need not pursue the theory of a constructive trust, since the record is silent as to any wrongful or fraudulent acts requiring such a remedy.

Nor does the record support any ownership interest in the residence by the husband and wife. In a dissolution proceeding courts must "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." Section 40-4-202(1), MCA.

In this case, neither spouse had title to the property. The title was in the names of the husband's parents who assumed the rights and responsibilities of ownership. They paid the mortgage and entered into a written agreement leasing the residence to their son and his wife. At one point the parents sent the couple an eviction notice for failure to pay rent. The parents had also discussed selling the residence with a realtor.

The husband wrote the wife a note in which he expressed his belief that the couple could have used the equity from a sale of the property as a down payment on a new home. However, his hope or belief, in the absence of any other evidence of such an

5

agreement, does not impose any legal obligation upon his parents.

Although the husband and wife did contribute $1,000 of the $15,000 down payment, the value of the house has decreased by $15,000 wiping out any gain which could be attributed to their investment. In short, little basis exists for the wife's claim of an ownership interest in the property.

We find that the husband and wife had no ownership interest in the house and that the District Court properly excluded the residence from the marital estate.


II.

Did the District Court abuse its discretion by refusing to award the wife attorney's fees?

The wife contends that the District Court should not have considered her future earning capacity in denying her request for attorney's fees. Award of attorney's fees in dissolution proceedings is provided for by § 40-4-110, MCA:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees . . . (Emphasis added.)

Since the statute is permissive, the appropriate standard of review is whether the court abused its discretion. In re the Marriage of Smith (Mont. 1990), 791 P.2d 1373, 1378, 47 St.Rep. 925, 931; In re the Marriage of Anderson (1988), 230 Mont. 89, 95, 748 P.2d 469, 472.

In evaluating the "financial resources of both parties," this Court has not required that the trial court need only consider the parties' present financial status. For instance, the court properly took into account the husband's greater earning potential, as well as his larger salary, pension, and good health in Carr v. Carr (1983), 205 Mont. 269, 273, 667 P.2d 425, 427. Even though one party is in a stronger financial position, the court does not abuse its discretion if the other spouse has sufficient resources to be responsible for his own fees. In re the Marriage of J.J.C. (1987), 227 Mont. 264, 271, 739 P.2d 465, 469. Other factors courts have examined include whether the spouse has custody of the children, needs additional vocational training, or is under a physician's care. In re the Marriage of Manus (1987), 225 Mont. 457, 465, 733 P.2d 1275, 1279-80.

In this case, although the husband has a far larger income, he testified that his expenses equalled his disposable income. Besides maintenance payments, he has the burden of family medical expenses exceeding the insurance coverage and the costs associated with child rearing. Although the wife's health may eventually worsen, at this time she has successfully completed law school and plans to seek full-time employment. The record indicates that the trial court was well aware of the parties' relative financial positions. We hold that the District Court did not abuse its discretion in considering the wife's earning potential as a factor in refusing to award attorney's fees.

The wife asserts that an award of attorney's fees is proper

where the spouse receives maintenance. Here, the District Court did not order maintenance. In signing the Family Maintenance Agreement in 1987, the parties themselves agreed that the husband pay maintenance to the wife. The maintenance agreement was not necessarily based on the wife's financial need and has no connection to the District Court's award of attorney's fees.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

8