JUSTICE LEAPHART
delivered the Opinion of the Court.
Laurice St. John (St. John), appeals from the Fourth Judicial District Court’s Judgment awarding Missoula Electric Cooperative, Inc. (MEC), $1,160.30 on its counterclaim. We reverse and remand.
We address the following dispositive issue on appeal:
Did the District Court err in holding that the Payment Agreement entered into between St. John and MEC was a settlement of all disputes?
BACKGROUND
In March of 1992, St. John purchased a house from Howard Lemm (Lemm) in Lolo, Montana. St. John did not move into the house for one year after her purchase. During that period she rented the property back to Lemm. St. John’s house is equipped with two electrical meters, one serving the house (house meter), and the other serving the swimming pool (pool meter). The pool meter and the house meter were billed separately and given separate account numbers by MEC. The dispute in this case arises from a bill for electrical services to the pool meter.
In May of 1993, Lemm contacted St. John to see if she wanted to use the pool during the upcoming summer season. In response, St. John contacted a local pool service company to prepare the pool for use during the summer season. In August of 1993, St. John contacted MEC to open an account for power to her new house in preparation for her arrival at the residence later that month. Soon after St. John opened the account, MEC billed her $2,040 for electrical service credited to the pool meter.
In October of 1993, St. John contacted MEC regarding the large bill and contended that it was a mistake. MEC told St. John that the bill was likely an error and would be corrected later. However, St. *318 John continued to be billed $2,040 for electrical service supplied to the pool for the period of July 20,1993, through August 19,1993. In addition to these charges, St. John received a later bill for an additional $2,040 for electrical services to the pool for the period of October 19,1993, through November 10,1993. This made her total bill $4,080. Although she refused to pay the bill from the pool meter, St. John continued to promptly pay all bills related to the house meter.
Due to St. John’s refusal to pay the bill related to the pool meter, MEC terminated electrical services to both the house and the pool. Although it would have been possible for St. John to switch to another supplier for her electrical service, she would first have to obtain the consent of MEC. St. John had a friend restore power to her home without the permission or knowledge of MEC. When MEC discovered the unauthorized service, it again terminated all electrical service to St. John’s two accounts.[1]
MEC agreed to reconnect St. John’s service provided she enter into a written agreement to pay the disputed balance in monthly installments. The agreement provided as follows:
I Laurice St. John Agree to pay $882.18 at the time of reconnect. And agree to make payments of 250.00 a month until my balance is paid in full.
Previous Balance 3908.87
current charges 237.43
tampering fee/disc 75.00
deposit 264.00
reconnect fee 75.00
Total bal 4.560.30
8/29/94 pmt -900.00
Remaining balance ment of $250.00 3.660.30 to make monthly pay-
I understand that if this agreement is not kept current my account or accounts will be disconnected.
*319 Members signature
/s/ Laurice A. St. John 8-29-94
Credit & Collections
/s/ Kelly M. Sherick
Under the terms of the above document, the repayment totaled $4,560.30. St. John agreed to make a $900 down payment and pay $250 per month until the remaining balance was paid. After St. John signed the agreement, and without St. John’s knowledge or consent, MEC altered the document by adding the words “ACCORD AND SATISFACTION.” In order to continue to receive electrical service, St. John made the down payment and ten monthly installments before she discontinued payments leaving a balance of $1,160.30 charged to the pool meter.
Unable to resolve her dispute with MEC, St. John filed suit against MEC alleging negligent billing and negligent infliction of emotional distress. MEC asserted a counterclaim against St. John, seeking payment of the balance of $1,160. A trial was held before the court sitting without a jury.
In its Findings of Fact, the District Court found that St. John had agreed to make payments solely to restore the electrical service to her house. Nonetheless, the court concluded that St. John had agreed to “settle” the dispute and had only partially complied with the settlement agreement. Accordingly, the court entered judgment against St. John in the amount of $1,160. St. John appeals from this judgment.
DISCUSSION
Did the District Court err in holding that the Payment Agreement entered into between St. John and MEC was a settlement of all disputes?
The standard of review of a district court’s findings of fact is whether they are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. This Court has adopted a three-part test in determining whether the findings are clearly erroneous. Interstate Prod. Credit Ass’n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. This test includes:
First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. [Citations omitted.] Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find *320 that “[A] finding is ‘clearly erroneous’ when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.” ...
DeSaye, 820 P.2d at 1287 (citing United States v. United States Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746). The standard of review of a district court’s conclusions of law is whether the court’s interpretation of the law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; see also Kreger v. Francis (1995), 271 Mont. 444, 898 P.2d 672.
The court’s ruling in favor of MEC is based upon the premise that “[i]f the parties to a legal dispute enter into an agreement to settle that dispute, the new agreement becomes enforceable according to its terms.” The court concluded that “Laurice St. John and MEC entered into a new agreement to settle their dispute on August 29, 1994 and she partially performed her obligations under that agreement, but then breached it by failing to pay the entire amount owed to MEC.” We hold that the court’s conclusion that St. John entered into an agreement to “settle” the dispute is not correct in light of the court’s findings of fact.
A number of the court’s findings of fact relate specifically to the question of whether St. John had a valid dispute with MEC and whether she entered into an agreement to settle that dispute. The court found specifically that “St. John did not consume 40,000 kwh of electricity [$2,040.00] during the period from when her account was opened [August 12, 1993] to the August meter reading [August 19, 1993].” The court also found that, although MEC billed St. John for 40,000 kwh consumption from October 19, 1993 through November 15,1993, “[t]he pool had been closed and shut down prior to October 19, 1993.” These findings would certainly indicate that St. John’s challenge to the MEC billing was not without a basis.
Further, with regard to the substance of the “Agreement” that St. John signed in order to restore power to her residence, the court found that “St. John signed a written promise to pay this disputed balance in monthly installments, without admitting she was responsible for those disputed charges, and without agreeing that the payment plan constituted a settlement of the dispute over the pool meter billing.” (Emphasis added.) The court also found that St. John had paid $3,400 to MEC “solely to keep her electrical service to her house.” MEC has not cross-appealed from these findings of fact and thus they constitute established facts.
*321 In light of these established facts, it is clear that St. John had a basis for disputing the MEC billing and that, in agreeing to make payments on the outstanding balance in order to restore power to her residence, she did not agree to “settle” the dispute. The court’s conclusion that St. John and MEC entered into a new agreement to “settle” their dispute is contrary to the court’s own Findings of Fact and is in error.
We hold that the court’s judgment in favor of MEC is based upon an erroneous conclusion that St. John entered into an accord or agreement to settle her dispute with MEC. As the record and the court’s own findings of fact indicate, there was no such settlement agreement.
Furthermore, once the court found that the dispute had been resolved through a settlement, it did not address the merits of St. John’s claims for negligent billing and negligent infliction of emotional distress. MEC contends that St. John failed to present a prima facie case of negligent infliction of emotional distress. However, it is for the trial court to determine whether the evidence supports a finding of severe emotional distress. Sacco v. High Country Independent Press (1995), 271 Mont. 209, 239, 896 P.2d 411, 429. In the absence of any findings and conclusions with regard to St. John’s claims, we have no basis for determining whether those claims were of merit. Bauer v. Cook (1979), 182 Mont. 221, 228, 596 P.2d 200, 204. Accordingly, we reverse the judgment for MEC and remand for the District Court to address the merits of St. John’s dispute with MEC’s $4,080 bill and the merits of her claim against MEC for negligent infliction of emotional distress.
JUSTICES NELSON, HUNT and REGNIER concur.

. We note that termination of electrical service can be a matter of grave concern. The media reports that Imelda Marcos’ unpaid electric bill of $200,000 may cause a power shutoff at her husband’s air-cooled crypt. Winners & Losers, TIME Feb. 10,1997, at 19.