No. 98-071

293 Mont. 500

977 P. 2d 322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 62

IN RE THE MARRIAGE OF

STEVE MOSS,

Respondent and Appellant,

and

JULIE MOSS,

Petitioner and Respondent.

No

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lynda S. White, Sedivy, Bennet & White, Bozeman, Montana

For Respondent:

Kent M. Kasting, Kasting, Combs & Kauffman, Bozeman, Montana

Submitted on Briefs: September 3, 1998

Decided: April 1, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Steve Moss (Steve) appeals and Julie Moss (Julie) cross-appeals from the Findings of Fact and Conclusions of Law which the Eighteenth Judicial District Court, Gallatin County, issued on May 21, 1997, and from the Decree of Dissolution which the court issued on November 15, 1997. Julie also requests her attorney fees, mediation fees and costs for defending Steve's appeal. We reverse and remand for further proceedings consistent with this opinion.**

**¶2. We address the following issues on appeal:**

**¶3. 1. Did the District Court err in including one-half of the value of the Spaulding Bridge Property in the marital estate?**

**¶4. 2. Did the District Court err in not imposing a constructive trust on the Spaulding Bridge Property?**

**¶5. 3. Did the District Court err in not distributing an insurance check to either Steve or Julie?**

¶6. 4. Should this Court require Steve to pay Julie's attorney fees, mediation fees and costs for this appeal?

## Factual and Procedural Background

¶7. Steve and Julie married on May 28, 1977. They separated on January 4, 1995. Nine months later, on September 14, 1995, Julie filed a petition for dissolution of marriage. On March 8, 1996, Julie moved the court to allow her to amend her petition for dissolution to add Don Moss (Don) and Shirley Moss (Shirley), Steve's parents, as additional parties to the case and to include a cause of action to quiet title in Steve and Julie's names to a 20 acre tract known as the Spaulding Bridge Property. The District Court granted Julie's motion on March 27, 1996.

¶8. On August 23, 1996, Julie filed an amended petition for dissolution wherein she alleged that Don and Shirley advanced her and Steve the money to pay for the Spaulding Bridge Property and that she and Steve repaid the advance. Thus, even though Don and Shirley held title to the Spaulding Bridge Property, Julie contended that she and Steve owned it and, consequently, that it should be included in the marital estate.

¶9. On September 30, 1996, Don and Shirley filed a response to Julie's amended petition wherein they alleged that neither Steve nor Julie had an ownership interest in the Spaulding Bridge Property. Don and Shirley also requested the court to quiet title to the Spaulding Bridge Property in their names.

¶10. The District Court held a bench trial on November 14 and 15, 1996. On May 21, 1997, the court issued its Findings of Fact, Conclusions of Law and Order wherein it found that Don and Shirley advanced Steve and Julie the money to buy the Spaulding Bridge Property and that Steve repaid Don and Shirley. Notwithstanding, the court found that Steve's interest in the Spaulding Bridge Property is equal to one-half of its value. As a result, the court included one-half of the value of the Spaulding Bridge Property in the marital estate.

¶11. The District Court also heard testimony at the trial on this matter regarding a $1,400 check which Julie's and Steve's homeowners insurance carrier paid them for damage to the siding of their garage which occurred when Julie and Steve were separated. The court, however, did not make any findings regarding the check nor

did the court apportion it to either Julie or Steve.

¶12. Steve appeals and Julie cross-appeals from the court's decision to include one-half of the value of the Spaulding Bridge Property in the marital estate and from the court's failure to distribute the $1,400 insurance check. Julie also requests her attorney fees, mediation fees and costs for defending Steve's appeal.

## Standard of Review

¶13. This Court reviews a district court's conclusions of law to determine whether they are correct. *In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 965 P.2d 895, ¶ 9, 55 St. Rep. 953, ¶ 9 (citing *Ash Grove Cement Co. v. Jefferson County* (1997), 283 Mont. 486, 491-92, 943 P.2d 85, 89).

¶14. This Court reviews a district court's findings of fact in a distribution of marital property case to determine whether the court's findings are clearly erroneous. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 954 P.2d 1147, ¶ 20, 55 St.Rep. 117, ¶ 20. See also Rule 52(a), M.R.Civ.P. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Kovarik*, ¶ 20 (citing *In re Marriage of Stufft* (1996), 276 Mont. 454, 459, 916 P.2d 767, 770).

¶15. If a district court's findings are not clearly erroneous, we review the court's distribution of the marital estate to determine whether the court abused its discretion. *Kovarik*, ¶ 21 (citing *Marriage of Stufft*, 276 Mont. at 459, 916 P.2d at 770). To determine whether a district court abused its discretion, we review the case to ascertain whether the court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Kovarik*, ¶ 21 (quoting *In re Marriage of Wessel* (1986), 220 Mont. 326, 333, 715 P.2d 45, 50).

## Issue 1.

¶16. *Did the District Court err in including one-half of the value of the Spaulding Bridge Property in the marital estate?*

¶17. Julie argues that the District Court's finding that Steve owned a one-half interest in the Spaulding Bridge Property is clearly erroneous because it is not supported by substantial evidence. Steve argues that the District Court erred in including one-half of the value of the Spaulding Bridge Property in the marital estate because Don and Shirley own it.

¶18. Although it is undisputed that Don and Shirley hold title to the Spaulding Bridge Property, the testimony at the bench trial on this matter was conflicting as to who paid for the property. Julie testified that Steve purchased the property for them in April 1985 with money that Don and Shirley loaned them. Julie explained that she and Steve, at that point in time, planned to build a house on the property. Julie testified that Steve told her that he had paid off the loan and that she remembered him "feeling good about that." Julie also remembered a conversation which occurred at the Taco Time restaurant in Belgrade wherein she said, "now that we have the property paid for, Steve, we should probably have it put in our name." Julie testified that Steve replied, "Yeah, I gotta do that one of these days."

¶19. Julie's parents also testified that Steve told them that he bought the Spaulding Bridge Property. Julie's parents also recalled that Steve stated at Taco Time that he agreed that title should be transferred into his and Julie's names.

¶20. Steve, in contrast, testified that he told his parents about the property and that they purchased it. Steve stated that his parents owned the property and denied that he paid his parents for the property. Similarly, Don testified that he and Shirley own the property. Shirley, likewise, stated that she and Don bought the property as an investment and denied that the property was purchased for Julie and Steve.

¶21. The District Court specifically found Julie's and her parent's testimony credible. In contrast, the court specifically found Steve's, Don's and Shirley's testimony not credible. Therefore, the court found that "Don and Shirley advanced the money to Steve and Julie for the purchase of an interest in the Spaulding Bridge property" and that "Steve repaid his parents in cash." The court then found that Steve had an interest in one-half of the value of the Spaulding Bridge Property and thus, in effect, that Steve jointly owned the property with Don and Shirley.

¶22. Having reviewed the record, however, we conclude that there is no evidence to support the District Court's finding that Steve had an ownership interest in only one-

half of the value of the property. The trial testimony left no room for the District Court to take the middle ground and find, in effect, that Steve jointly owned the property with Don and Shirley. Thus, since there is not substantial evidence to support the court's finding that Steve had an ownership interest in only one-half of the value of the Spaulding Bridge Property, the court's finding is clearly erroneous and we therefore reverse that finding.

¶23. Consequently, since § 40-4-202, MCA, states that the court shall "equitably apportion between the parties the property and assets belonging to either or both . . . ," the District Court erred in including only one-half the value of the Spaulding Bridge Property in the marital estate on the grounds that Steve owned a one-half interest in the property. Accordingly, we reverse the District Court's decision to include only one-half of the value of the Spaulding Bridge Property in the marital estate on the grounds that Steve owned a one-half interest in the property.

## Issue 2.

¶24. *Did the District Court err in not imposing a constructive trust on the Spaulding Bridge Property?*

¶25. As noted above, it is undisputed that Don and Shirley hold title to the Spaulding Bridge Property. Julie, however, argues that the District Court should have imposed a constructive trust on the property, in favor of her and Steve, and, consequently, should have included the entire value of the property in the marital estate.[1] Steve argues that the District Court correctly concluded that a constructive trust should not be imposed in the instant case because there is no evidence of fraud or other wrongful acts to support such a remedy.

¶26. Steve cites *In re Marriage of Malquist* (1988), 234 Mont. 419, 763 P.2d 1116 and *In re Marriage of Owen* (1990), 244 Mont. 306, 797 P.2d 226, in support of his argument that there is no basis to impose a constructive trust in the instant case because the record does not contain any evidence of fraud or wrongful acts. In *Marriage of Malquist*, the wife asserted that the family home was either part of a voluntary trust or that the district court should have imposed either a constructive trust or a resulting trust on the property. This Court refused to address her argument that a constructive trust should be imposed because the record was

"virtually silent as to any such fraudulent or wrongful acts which would justify the implication of a constructive trust." *Marriage of Malquist*, 234 Mont. at 422, 763 P.2d at 1118.

¶27. Similarly, in *Marriage of Owen*, the wife argued that a constructive trust should have been imposed on a house purchased by her husband's parents. The wife pointed out that she and her husband selected the house, handled the negotiations for its purchase and paid $1,000 of the $15,000 down payment. Even so, we rejected the wife's claim that she and her husband had an ownership interest in the house because her husband's parents not only held title to the property but also paid the mortgage, entered into a written lease agreement with their son and his wife, sent them an eviction notice for failing to pay rent, and discussed selling the house with a real estate agent. *Marriage of Owen*, 244 Mont. at 309, 797 P.2d at 228. Moreover, we stated that we would not address the wife's argument that a constructive trust should have been imposed because "the record [was] silent as to any wrongful or fraudulent acts requiring such a remedy." *Marriage of Owen*, 244 Mont. at 309, 797 P.2d at 228.

¶28. The rule requiring fraud or other wrongful acts to impose a constructive trust on property can be traced to a longstanding statute which stated:

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other or better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it.

Section 72-20-111, MCA (1987) (repealed 1989). See also *Meagher v. Harrington* (1927), 78 Mont. 457, 470, 254 P. 432, 435 (citing § 7887, RCM (1921)) and *Platts v. Platts* (1959), 134 Mont. 474, 480, 334 P.2d 722, 727 (citing § 86-210, RCM (1947)).

¶29. However, the 1989 Montana Legislature repealed § 72-20-111, MCA (1987), along with several other statutes concerning trusts, and enacted the Trust Code, codified at Title 72, Chapters 33-36 of the Montana Code Annotated. Section 72-33-104, MCA, provides:

Other than 72-33-216 through 72-33-220, nothing in chapters 33 through 36 affects the law relating to constructive or resulting trusts. Section 72-33-219, MCA, however,

provides:

A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it.

Hence, § 72-33-219, MCA, affected the law relating to constructive trusts by making constructive trusts dependent upon, and related to, the equitable principle of unjust enrichment. See *Lawrence v. Clepper* (1993), 263 Mont. 45, 53, 865 P.2d 1150, 1156. More to the point, § 72-33-219, MCA, by its plain language, does not require a party seeking to impose a constructive trust to prove that the party who holds title to the property obtained title by fraud or other wrongful acts. Rather, a person seeking to impose a constructive trust on property must only prove that the title holder would be unjustly enriched if they were permitted to retain title. Thus, as stated in the comments to the Restatement section from which § 72-33-219, MCA, was drawn:

A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong *or would be unjustly enriched if he were permitted to keep the property*.

Restatement of the Law of Restitution, § 160, Comment *b* (1937) (emphasis added). See also George T. Bogert, Trusts § 77 at 287 (6th ed. 1987) (stating "[w]henever equity finds that one has title to property, real or personal, originally acquired by any kind of wrongdoing *or, although innocently obtained, now held under such circumstances that retention of the title will result in unjust enrichment*, equity may declare such title-holder to be the trustee of a trust constructed by it for the purpose of working out justice, which is merely a convenient means of remedying a wrong.") (emphasis added). Therefore, although a constructive trust may be imposed because the title holder obtained title by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, a constructive trust may also be imposed pursuant to § 72-33-219, MCA, in cases where a title holder innocently obtained title to property but would be unjustly enriched if they were allowed to retain the title.

¶30. Notwithstanding, we recognize that this Court has stated in cases decided after the effective date of the Trust Code that fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts are the bases upon which a constructive trust is found. See, for example, *Hilliard v. Hilliard* (1992), 255 Mont. 487, 489, 844 P.2d 54, 55 (citing *Gitto v. Gitto* (1989), 239 Mont. 47, 778 P.2d 906 and *Howard v. Dalio* (1991), 249 Mont. 316, 815 P.2d 1150). However, based on the foregoing, we conclude that, although fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts may be the basis for imposing a constructive trust, these factors are not necessarily a prerequisite to imposing a constructive trust pursuant to § 72-33-219, MCA. Consequently, *Hilliard*, 255 Mont. 487, 844 P.2d 54; *Howard*, 249 Mont. 316, 815 P.2d 1150; *Marriage of Owen*, 244 Mont. 306, 797 P.2d 226; and any other Montana case decided after the effective date of the Trust Code which requires fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts as the only basis on which to impose a constructive trust, are hereby clarified to that extent. Moreover, cases decided before the effective date of the Trust Code, such as *Marriage of Malquist*, are inapplicable to constructive trust cases under the Trust Code to the extent that they require fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts as the only basis on which to impose a constructive trust.

¶31. In the instant case, Julie argues, and we agree, that Don and Shirley would be unjustly enriched if they retained title to the Spaulding Bridge Property even though they hold title to the property and have paid the taxes and insurance on the property. The District Court found that Don and Shirley advanced Steve and Julie the purchase price of the property and that Steve paid off this debt. Moreover, the court found that Steve spent more than $4,000 of marital funds to drill a well on the property and that Steve and Julie obtained the water rights to the property. The court also found that Steve and Julie built a barn on the property so that they would have a place to live while they built a house on the property and that Steve paid for the electrical and building permits necessary to construct the barn. Finally, the court found that Steve paid for the utility bills on the property and that he was the contact person for the property owner's association. Steve has not appealed from these findings of fact, and thus they constitute established facts. *St. John v. Missoula Elec. Co-op., Inc.* (1997), 282 Mont. 315, 320, 938 P.2d 586, 589.

¶32. Moreover, testimony which the District Court found credible shows that the

parties treated the property as though Steve and Julie owned it. For example, David Gannett (Gannett), who is not related to either Julie or Steve, testified that he called Don in an effort to set up a property owner's association. Gannett testified that Don stated that he was only the title holder for "convenience purposes," that Steve was handling the property, and, therefore, that Gannett should contact Steve regarding any meetings. Similarly, Jeannette Carlson (Carlson), who also is not related to either Julie or Steve, testified that she approached Don at his shop to talk about the property owner's association. Carlson testified that Don told her that his name was on the title "just to help [Steve and Julie] buy the property" and that she should talk to Steve about matters concerning the property. Carlson also recounted that she asked Steve if he was interested in selling the property and that Steve quoted her a price. Additionally, the court found that Julie's family helped build the barn on the property, planted trees on the property and that Julie's father helped Steve put up a fence on the property. The court noted that Julie's family testified that they helped with the improvements because they believed that the property belonged to Steve and Julie.

¶33. Consequently, based on the District Court's findings that Steve repaid his parents the purchase price of the property, that Steve paid for improvements on the property and that the parties acted as though Steve and Julie owned it, we hold that Don and Shirley would be unjustly enriched if they retained title to the Spaulding Bridge Property. Thus, the District Court erred in not imposing a constructive trust on the property pursuant to § 72-33-219, MCA.

¶34. Finally, we must address Steve's arguments that the statute of frauds and the statute of limitations for agreements not in writing bar any claim that Julie has to the Spaulding Bridge Property. Section 70-20-101, MCA, provides:

No estate or interest in real property, other than an estate at will or for a term not exceeding 1 year can be created, granted, assigned, surrendered, or declared otherwise than by *operation of law* or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring it or by his lawful agent thereunto authorized by writing.

(Emphasis added.) Constructive trusts arise by operation of law, § 72-33-220, MCA, thus, § 70-20-101, MCA, does not bar Julie's claim to the Spaulding Bridge Property. See also §

70-20-102(2), MCA (stating that § 70-20-101, MCA, must not be construed to "prevent any trust from arising . . . by . . . operation of law."). Moreover, since Julie is not attempting to directly enforce a verbal agreement, § 27-2-202(2), MCA, which requires that an action based upon a contract, account, or promise not founded on an instrument in writing be brought within five years, is not applicable in the instant case.

**¶35. Based on the foregoing, we reverse the District Court's decision not to impose a constructive trust on the Spaulding Bridge Property and remand the instant case with instructions to impose a constructive trust on the property in favor of Steve and Julie and, consequently, to impose an equitable duty on Don and Shirley to convey the property to Julie and Steve and, thereafter, to include it in the marital estate and equitably apportion the full value of the property pursuant to § 40-4-202, MCA.**

**Issue 3.**

**¶36.** *Did the District Court err in not distributing an insurance check to either Steve or Julie?*

**¶37. Steve and Julie agree that the District Court erred in failing to apportion a $1,400 insurance check which was issued to them jointly for damage to the siding on their garage which occurred after they separated. Steve argues that, since he repaired the siding, this Court should distribute the check to him as reimbursement for his labor and expenses. Julie requests that we remand this issue to the District Court with instructions to divide the check equally between Steve and Julie.**

**¶38. However, since the District Court made no findings or conclusions regarding the $1,400 check, we have no basis to instruct the District Court on how to apportion it. Cf.** *St. John***, 282 Mont. at 321, 938 P.2d at 589 (citing** *Sacco v. High Country Independent Press* **(1995), 271 Mont. 209, 239, 896 P.2d 411, 429 and** *Bauer v. Cook* **(1979), 182 Mont. 221, 228, 596 P.2d 200, 204) (ruling that this Court had no basis for determining whether a claim for severe emotional distress had merit because the trial court made no findings and conclusions regarding whether the evidence supported such a claim). Accordingly, we remand this case to the District Court with instructions to enter findings of fact regarding the $1,400 insurance check and to equitably apportion it pursuant to § 40-4-202, MCA.**

**Issue 4.**

¶**39.** *Should this Court require Steve to pay Julie's attorney fees, mediation fees and costs for this appeal?*

¶**40. Julie argues that we should award her attorney fees, mediation fees and costs for defending this appeal pursuant to § 40-4-110(1), MCA, which provides:**

The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 and for professional fees, including sums for legal and professional services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the professional, who may enforce the order in the professional's name.

Pursuant to § 40-4-110, MCA, this Court may award attorney fees incurred in defending an appeal. *In re Marriage of Dorsey* (1997), 284 Mont. 392, 397, 945 P.2d 430, 433. See also *In re Marriage of Conkey* (1995), 270 Mont. 200, 207-08, 890 P.2d 1291, 1295. Section 40-4-110, MCA, requires the court to consider the financial resources of both parties. We cannot consider the financial resources of the parties at this stage of the instant case, however, because the complete marital estate has not been equitably apportioned by the District Court. Moreover, we note that the trial court is in a better position to rule on the matter of attorney fees and that Julie can raise her claim for attorney fees on remand. Accordingly, we decline to award Julie her attorney fees, mediation fees and costs pursuant to § 40-4-110, MCA.

¶**41. Julie also argues that we should award her attorney fees, mediation fees and costs pursuant to Rule 32, M.R.App.P., on the grounds that Steve's appeal was taken without substantial or reasonable grounds. Rule 32, M.R.App.P., provides:**

If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

As a general rule, this Court will not impose sanctions pursuant to Rule 32, M.R.Civ.P., unless the appeal is entirely unfounded and intended to cause delay or unless counsel's actions otherwise constitute an abuse of the judicial system. *Bi-Lo Foods, Inc. v. Alpine*

*Bank, Clifton*, 1998 MT 40, ¶ 36, 287 Mont. 367, ¶ 36, 955 P.2d 154, ¶ 36 (citing *CNA Ins. Companies v. Dunn* (1995), 273 Mont. 295, 301, 902 P.2d 1014, 1018 and *Bickler v. The Racquet Club Heights Assoc.* (1993), 258 Mont. 19, 25, 850 P.2d 967, 971). Although we did not rule in Steve's favor nor grant him the relief he requested, the issues he raised had merit and were not unreasonable. Therefore, we deny Julie's request for attorney fees, mediation fees and costs pursuant to Rule 32, M.R.App.P.

**¶42. Reversed and remanded for further proceedings consistent with this opinion.**

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

1. [1] Julie also argues for the first time in her reply brief that, even if a constructive trust is not imposed in the instant case, a resulting trust should be imposed. This Court, however, will not address an issue raised for the first time on appeal. *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 28, 961 P.2d 100, ¶ 28, 55 St. Rep. 574, ¶ 28 (citation omitted). Moreover, this Court will not address an issue raised for the first time in a reply brief. *Unified Industries*, ¶ 28 (citation omitted). Accordingly, we will not address this argument.