No. 02-511

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 38N

IN RE THE MARRIAGE OF

PHYLISS HAMMERMEISTER,

Petitioner and Respondent,

and

WALTER HAMMERMEISTER,

Respondent and Appellant.

APPEAL FROM:     District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DR 93-37,
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

For Respondent:

Joan E. Cook, Law Office of Joan E. Cook, Missoula, Montana

Submitted on Briefs:   January 16, 2003

Decided:   February 24, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Walter Hammermeister (Walter) appeals from the District Court's denial of his motion to hold Phyliss Hammermeister (Phyliss) in contempt of court for her failure to comply with the previously entered dissolution decree. We reverse in part, and dismiss Walter's remaining issues.

¶3 The issues on appeal are:

¶4 1. Is the District Court's denial of the contempt motion an appealable order?

¶5 2. Did the District Court err in denying the contempt motion?

**Background**

¶6 The marriage of the parties was dissolved by decree entered by the District Court on June 1, 1998, which approved and incorporated a property settlement agreement negotiated by the parties in April of 1998. On March 22, 2002, Walter moved to hold Phyliss in contempt of court, asserting that she had failed to comply with provisions of the settlement agreement by failing to execute a release of the mortgage she held which secured periodic payments from Walter, following his payment thereof; by failing to transfer her interest in a life insurance policy on Walter's life to a trust; and by expending, between April of 1993

2

and October of 1997, some $34,000 in proceeds from the sale of grain and livestock which had been deposited in the parties' joint account, and which had been designated as Walter's property by the parties' settlement agreement entered in April 1998.

¶7　In response to Walter's motion, the court ordered Phyliss to appear and show cause why she should not be held in contempt for failure to comply with the decree and the incorporated settlement agreement, and conducted a hearing on June 17, 2002. The District Court concluded the hearing by ruling, from the bench, that it found no basis for contempt on any of the issues raised by Walter. Walter appeals from the District Court's "refusal to hold [Phyliss] in contempt for failure to comply with the dissolution order." Although Phyliss did not file a motion to dismiss Walter's appeal, she challenges the propriety of the appeal in her respondent's brief, and requests dismissal.

**Discussion**

*1.　Is the District Court's denial of the contempt motion an appealable order?*

¶8　Generally, contempt of court orders entered by the district court are not reviewable on appeal. *Hanson v. Hanson* (1928), 83 Mont. 428, 272 P. 543 (per curiam). However, a "family law exception" to this rule has been recognized by this Court:

> Pursuant to § 3-1-523, MCA, contempt of court orders issued by a district court are final and usually unreviewable by this Court except by way of a writ of certiorari or review. However, an exception exists for contempt of court orders made in dissolution of marriage proceedings. *In re Marriage of Sessions* (1988), 231 Mont. 437, 441, 753 P.2d 1306, 1308; citing *In re Marriage of Smith* (1984), 212 Mont. 223, 225-26, 686 P.2d 912, 914. Therefore, the contempt of court order in this case is properly before the Court for review.

3

*In re Marriage of Boharski* (1993), 257 Mont. 71, 77, 847 P.2d 709, 713. Pursuant to the family law exception, we have reviewed appeals from orders holding parties in contempt, as well as orders which decline to hold parties in contempt. *See In re Marriage of Heath* (1995), 272 Mont. 522, 901 P.2d 590, and *In re Marriage of Smith* (1984), 212 Mont. 223, 686 P.2d 912. However, we adopted a different standard of review for orders *denying* a party's request for contempt in *In re Marriage of Baer*, 1998 MT 29, 282 Mont. 322, 954 P.2d 1125, wherein we stated:

> [A district court's] power to inflict punishment by contempt is necessary to preserve the dignity and authority of the court. *See also Woolf v. Evans* (1994), 264 Mont. 480, 483, 872 P.2d 777, 779. Accordingly, where a district court has found that there is no such need to enforce compliance with its order or that the actions of a party do not present a challenge to its dignity and authority, *we will not reverse its decision absent a blatant abuse of discretion.*

*Marriage of Baer*, ¶ 45 (emphasis added).

¶9      In *Lee v. Lee*, 2000 MT 67, 299 Mont. 78, 996 P.2d 389, we recognized that the family law exception was largely without form and, absent guiding parameters, could undermine the district court's contempt power and the orderly conduct of domestic cases. We held:

> [T]his Court concludes that it would be poor public policy to create circumstances whereby a district court's contempt power, in enforcing the rights of the parties before it, is in any manner diminished by one party's ability to file a direct appeal that, in turn, frivolously and needlessly delays his or her compliance with the lower court's judgment and orders. . . . It is therefore imperative that the "family law" direct appeal exception be well-defined and properly narrowed once and for all in light of the foregoing policy.
>
> . . . .

4

. . . Therefore, we hold that the "family law" direct appeal exception established in our case law applies when, and only when, the judgment appealed from includes an ancillary order which effects the substantial rights of the involved parties.

*Lee*, ¶¶ 34, 37. The 2001 Legislature codified the holding in *Lee* by amending § 3-1-523, MCA, adding the family law exception to the statute, which now states, in part:

> 3-1-523. **Judgment and orders in contempt cases final–family law exception**. . . .
> (2) A party may appeal a contempt judgment or order in a family law proceeding only when the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved.

¶10 Phyliss argues that none of the three contempt issues raised on appeal by Walter include an ancillary order which affected the substantial rights of the parties, and therefore, Walter's appeal does not satisfy the family law exception to the general rule that contempt orders are not appealable, and should be dismissed.

¶11 Walter argues that the District Court issued orders which, though orally made from the bench, were nonetheless ancillary to the three contempt issues he has raised, making them appealable under § 3-1-523(2), MCA. On the issue of Phyliss's failure to execute the mortgage release, Walter notes that the District Court ordered Walter's counsel to prepare the release for Phyliss's signature. On the issue of Phyliss's failure to transfer the insurance policy to the trust, Walter notes that the District Court "suggested" that the parties modify their trust agreement in order to resolve their dispute over the trust. He argues that these were ancillary orders which made the related contempt issues appealable.

5

¶12 We conclude, however, that these "orders" did not constitute ancillary orders affecting "the substantial rights of the parties . . . ." Section 3-1-523(2), MCA. The District Court simply offered practical solutions by which the parties could resolve their disputes, and the parties, in open court, agreed to implement the court's solutions and resolve those issues. While the court's instruction to Walter to draft the release was, in technical terms, an order, it did not affect Walter's substantial rights. Neither did the court's "suggestion" that the trust be amended. Consequently, Walter's first two contempt issues are not appealable, and therefore, not properly before the Court. "[N]othing remains for us to do but to dismiss" these issues. *Hanson*, 83 Mont. at 429, 272 P. at 543.

¶13 On the issue of Phyliss's alleged expenditure of $34,000 of grain and livestock proceeds belonging to Walter, Walter notes that, in failing to hold Phyliss in contempt, the District Court stated that the parties' property settlement agreement, entered in April 1998 following the alleged expenditure of funds, "resolved this issue. [Walter] had ample opportunity, prior to that time, to raise the issue of the checks when the parties divided their property. All of this predates the court's decree." Walter asserts that this holding is an ancillary order affecting his substantial rights.

¶14 On this issue, we agree with Walter. The District Court's order denying the motion for contempt on this $34,000 issue was based upon an interpretation of the parties' property settlement agreement, or a waiver thereof by Walter, which constitutes an ancillary order affecting the substantial rights of the parties. Consequently, this contempt issue, and the order ancillary thereto, are properly reviewable on appeal.

6

## 2. Did the District Court err in denying the contempt motion?

¶15     Though Walter offered to provide testimony at the hearing, the District Court took no testimony, instead soliciting offers of proof from counsel regarding what they intended to prove, and from those, initially determined that factual issues remained:

> I believe what I hear you saying, Miss Cook [counsel for Phyllis], is that you believe there were monies in that [joint] account that did not come from the sale of grain or livestock, and those are, in effect, the monies that [Phyliss] drew upon. I guess I would say I tend to agree with you if there was sufficient money in the account from sources other than the sale of grain or livestock to cover the amount that she withdrew. If, in fact, she withdrew something that taps into the proceeds of the sale of grain or livestock, and I think the provisions of the agreement have to control, then that money belongs to [Walter].

However, as noted above, the court then went on to rule, as a matter of law, that the parties' settlement agreement, or Walter's waiver thereof, barred Walter from pursuing repayment of the contested sums, and therefore, took no testimony on the issue. Thus, Walter requests that we reverse and remand for an evidentiary hearing.

¶16     However, on this record, and on this briefing, we are unable to determine whether there was a "blatant abuse of discretion" by the District Court in refusing to hold Phyliss in contempt for the asserted misappropriation of the $34,000. *Marriage of Baer*, ¶ 45. As noted, evidence was not taken at the hearing, and factual issues remain regarding the source of the funds expended. Further, the legal issues surrounding the property settlement agreement's application, and any waiver of the agreement by Walter, were not addressed in a written order by the District Court, nor directly addressed in the parties' briefing to this Court. Thus, on the one issue which is properly before us, we reverse the District Court's

7

denial of Walter's motion for contempt, and remand this matter to the District Court for further proceedings consistent with this opinion.

¶17 Reversed in part, with the remaining issues dismissed.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART