**Nina L. LAPP, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 69–1147–Civ.**

United States District Court,
S. D. Florida.

Aug. 22, 1970.

Gus Efthimiou, Jr., Miami, Fla., for plaintiff.

Lavinia L. Redd, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

FULTON, Chief Judge.

This is a civil action brought by Nina L. Lapp against the United States of America pursuant to Title 26, United States Code, Section 7426, seeking recovery of a money judgment for an alleged wrongful tax levy by the government. The Court has jurisdiction of the cause under the provisions of 26 U.S.C. § 7426.

The plaintiff, Nina L. Lapp, has been the wife of Frank D. Lapp since 1923. On January 16, 1963, the plaintiff opened savings account No. 5986–G, representing share interest in the Chase Federal Savings and Loan Association of Miami Shores, Florida. The signature card and passbook are in the name of "Nina L. Lapp as trustee for Frank D. Lapp (hus.)". The initial deposit was in the amount of $500.00. On March 20, 1963, a deposit of $100.00 was made. On March 29, 1963, federal tax assessments were made against Frank D. Lapp for unpaid withheld income and Federal Insurance Contributions Act taxes in the total amount of $35,429.14 for periods ending March 31, 1960, June 30, 1960 and September 30, 1960. Thereafter, additional federal tax assessments were made against Frank D. Lapp, in amounts not relevant to this case. Subsequent to the tax assessments made against her husband on March 29, 1963, and continuing through the years, the plaintiff made deposits in account No. 5986–G.

On April 2, 1969, the government served a notice of levy upon account No. 5986–G of the Chase Federal Savings and Loan Association of Miami Shores, Florida, pursuant to 26 U.S.C. § 6331. In accordance with that levy, the Association delivered the sum of $17,354.00, representing the total amount in the account, to the government. The levy was made not for any tax liability of the plaintiff, but rather in an attempt by the government to recover a portion of the $34,507.08 unpaid balance which remained outstanding on the $35,429.14 assessments made against Frank D. Lapp on March 29, 1963, and on subsequent assessments. The plaintiff has brought this suit to recover the amount of the levy, with interest, claiming that the funds in account No. 5986–G belonged solely to her, with her husband having no interest therein.

Under Florida law, a deposit by an individual of his own money in his own name, as trustee for another, creates a revocable trust, regardless of the intention of the depositor, until such time as the depositor takes some action to render the trust irrevocable. Seymour v. Seymour, 85 So.2d 726, 727 (Fla.1956). When such an account is created, the depositor retains exclusive control over the funds so long as the account exists, until his death, or until the trust is otherwise rendered irrevocable. If a valid revocable trust was created by the plaintiff in account No. 5986–G, there has been no showing that anything was done to render it irrevocable. Therefore, the essential inquiry in this case must be to determine which, if any, of the funds deposited by the plaintiff in account No. 5986–G consisted of her own separate money. Any such amounts, and the interest thereon, would not be properly subject to levy by the government for her husband's tax liabilities.

Any funds which belonged to plaintiff's husband subsequent to the March 29, 1963, assessments, but prior to being deposited in the account, were subject to levy by the government. Under 26 U.S.C. § 6321 the government has a lien upon all property rights of a taxpayer who has failed to pay a tax after proper demand for payment. Under pertinent provisions of 26 U.S.C. § 6322, the lien created by § 6321 arises at the time the assessment is made and continues until the tax liability is satisfied. This federal tax lien attaches not only to property interests of the taxpayer at the time the lien arises, but attaches instanter to all property rights acquired by the taxpayer during the life of the lien. Seaboard Surety Co. v. United States, 306 F.2d 855 (9 Cir. 1962). Once the lien attaches to property of the taxpayer, it follows that property into the hands of any transferee. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). In order to ascertain which, if any, of the funds in the account belonged to the plaintiff, it is necessary to treat each source of those funds separately.

A portion of the funds, totalling some $4,149.40 with accrued interest, was derived from stock dividends. On July

26, 1950, Frank D. Lapp purchased forty shares of American Telephone and Telegraph Company common stock which, by virtue of stock splits and rights derived from the forty shares now number three hundred twenty-two shares. Also on July 26, 1950, Frank D. Lapp purchased one hundred shares of United States Steel Corporation common stock. Frank D. Lapp supplied all funds necessary to purchase both the A. T. & T. and U.S. Steel stock. However, the style of the brokerage account through which these shares were purchased was "Frank D. and Nina L. Lapp, as joint tenants with the right of survivorship and not as tenants in common." That same inscription was placed on each stock certificate, and the dividend checks resulting from the stock were made payable to "Frank D. and Nina L. Lapp". Under Florida law, when property is purchased by a husband and conveyed to the wife or taken in her name, it is presumed that he intended to make a gift to her. A similar intention is presumed when stock purchased with the husband's money is taken in the names of both spouses. Porterfield v. Porterfield, 181 So.2d 16 (Fla.App.3d Dist.1965); Smith v. Smith, 177 So.2d 351 (Fla.App.2d Dist.1965); 17 Fla. Jur. Husband and Wife §§ 43 and 44 (1958). No evidence was presented in this case which is sufficient to overcome the presumption of gift. While it is true that Frank D. Lapp reported the dividend income from the stock on his own individual federal income tax return for several years, the certified public accountant who prepared the tax return testified that he as an accountant assumed responsibility for allocating the dividend income to one or the other or both of the Lapps depending on what he thought would be best for them for tax purposes. Frank Lapp testified that the plaintiff had possession of the stock certificates. Therefore, it is clear that both Frank D. Lapp and his wife held an interest in the stock and the dividends derived therefrom. It is important to ascertain the nature of that interest.

Under Florida law, a modified version of the common law estate by the entireties has evolved. The estate cannot exist unless the five unities of person, time, title, possession and control are present. Such an estate is an almost metaphysical concept which developed at the common law from the Biblical decclaration that a man and his wife are one. Generally, under Florida law, when property is taken in the names of both spouses, even if purchased solely with funds belonging to the husband, an estate by the entireties is created. 17 Fla. Jur. Husband and Wife §§ 18 and 44 (1958). In Florida, both real and personal property may be held by husband and wife as tenants by the entirety, if the necessary conditions are met. Winters v. Parks, 91 So.2d 649 (Fla.1956); Bailey v. Smith, 89 Fla. 303, 103 So. 833 (Fla. 1925); Pemelman v. Pemelman, 186 So. 2d 552 (Fla.App.2d Dist.1966). The evidence in this case indicates and the Court finds that Frank D. Lapp and the plaintiff held both the A.T. & T. and U.S. Steel shares and the dividends derived therefrom in an estate by the entireties. As the law has evolved in Florida, property held in such an estate cannot be charged with the individual debts of either spouse, in the absence of fraud. Neither spouse has any separate interest in such property upon which a lien can attach or execution can be had. See generally, 17 Fla. Jur. Husband and Wife §§ 19 and 20 (1958); 1 Redfearn, Wills and Administration of Estates in Florida § 171 (1957). There is nothing in this case to demonstrate fraud on the part of Frank Lapp when he purchased this stock and had it placed in his wife's name jointly with his own. The stock was purchased in 1950, some thirteen years before the federal tax assessments of 1963. Clearly under Florida law, the income derived from this stock could not be reached to satisfy the individual debts or obligations of Frank D. Lapp. His interest in such funds was undivided and coequal with his wife. Each owned an undivided half interest in the whole.

The federal courts have recognized joint holdings and tenancies by the entireties where they have been created by state law. It has been established that such interests are not only insulated from ordinary creditors, but are also invulnerable to assaults by the federal tax collector. Stuart v. Willis, 244 F.2d 925 (9 Cir. 1957); Raffaele v. Granger, 196 F.2d 620 (3 Cir. 1952). The federal taxing authority had no power to levy upon Frank Lapp's interest in the dividend checks before they were deposited in plaintiff's savings account, since the checks did not "belong" to Frank Lapp within the meaning of 26 U.S.C. § 6331 (a). A fortiori, when Lapp endorsed the checks over to his wife, presumably thereby making her a gift, and she deposited the proceeds in an account in her own name, those proceeds were not subject to levy by the government under § 6331(a). The government argues that many of these deposits were made after the 1963 tax assessments, but this argument is to no avail, since under Florida law Frank Lapp had no separate interest in the dividend checks which he could have used for tax payments, even had he wished to do so. In the absence of some voluntary surrender by the plaintiff of her interest in the funds, they were immune from this levy. No evidence of such voluntary surrender has been proffered.

Having resolved the question of the inability of the federal tax levy to reach the stock dividends, it is simple to deal with the next category of funds in account No. 5986–G. These are funds totalling $600, which were deposited in the account prior to the March 29, 1963, assessments. This money came from two sources. On January 16, 1963, the plaintiff opened the account with two checks drawn on Hialeah-Miami Springs Bank, each with the face value of $250 with one payable to Nina Lapp, and one to Frank Lapp. Frank Lapp testified that his intention in delivering such funds to his wife was to make a gift to her. The Hialeah-Miami Springs Bank account on which these checks were drawn was a joint account held in the names of both Frank and Nina Lapp. However, the intracacies of timing and just who held what interest in these funds prior to deposit in account No. 5986–G is irrelevant, since the federal tax assessment of March 29, 1963, was not made until this $500 had been deposited in plaintiff's account No. 5986–G, under her sole legal control. At the time of the assessment and subsequent thereto, Frank Lapp held no interest in this $500. The same conclusion must be reached in regard to the remaining $100 deposited in the account before the assessments. This was in the form of a $100 dividend check drawn on U.S. Steel Corporation, and deposited in account No. 5986–G on March 20, 1963. As previously discussed, Frank Lapp had no individual interest in this check to which a federal tax lien could attach, either before or after it was placed in account No. 5986–G.

The third major category of funds in account No. 5986–G totals $3,100 received by the plaintiff from Frank Lapp. This sum is comprised of thirteen separate cash deposits made by the plaintiff through the years, beginning July 20, 1964. Since her marriage in 1923, the plaintiff has never been employed except for general secretarial assistance which she provided for her husband's business. In 1945 she received an inheritance of $300, and several years thereafter she received another $300 under an accident insurance policy. There is no evidence that any of this $600 was ever deposited in account No. 5986–G. Other than this $600, the plaintiff has had no source of funds besides her husband. The plaintiff testified that the cash deposits totalling $3,100 consisted of money saved from her weekly household allowance and from money earned by her from working for her husband. There is no satisfactory proof that the plaintiff was ever in fact gainfully employed in her husband's business. She earned no regular salary. She testified that her husband "gave her what he could afford", and that it "was just a gift like a husband gives a wife each week". Frank

Lapp testified that his wife worked for him as a "nonpaid employee", and that she was never considered as an employee or put on the payroll. It is evident that the sums given by Frank Lapp to the plaintiff which comprise this $3,100 were in the nature of a general household allowance. The plaintiff, who has the burden of proof in this lawsuit, has not presented evidence to indicate that any portion of this $3,100 was given to the plaintiff by her husband prior to the tax assessments. Therefore, under 26 U.S.C. §§ 6321 and 6322, this money was impressed with the federal tax lien as soon as it was acquired by Frank Lapp. Seaboard Surety Co. v. United States, *supra*. Thereafter, even if he successfully divested himself of all interest in the money, such as by a valid gift to his wife, the tax lien followed the funds into the hands of the transferee. United States v. Bess, *supra*. It is apparent that this $3,100 and the interest derived therefrom was properly reachable by the government under its notice of levy of April 2, 1969.

 The remaining category of funds in account No. 5986–G consists of $6,690.15, with interest. This amount is comprised of monies earned by Frank Lapp in his business and deposited first in the joint account held by he and his wife in the Hialeah-Springs Bank. This money was later withdrawn by Frank Lapp and delivered to his wife, who deposited it in account No. 5986–G at Chase Federal. As has been previously explained, these sums were impressed with the federal tax lien as soon as they became the property of Frank Lapp, *before* being deposited in the joint account at the Hialeah-Miami Springs Bank. After the lien attached, it followed the funds into account No. 5986–G. The levy was valid as against these funds.

This memorandum opinion shall serve as Findings of Fact and Conclusions of Law. Counsel for the government shall forthwith prepare and submit a form of final judgment in conformity herewith. Each side shall bear its own costs.