**In re W. Eugene STRATE, Debtor.**

**W. Eugene Strate, Plaintiff,**

v.

**Raymond Wishman, April Wishman, Terri Lynne Wishman, Allen Ray Wishman, and Promise Land Business Organization, a Montana business trust, Defendants,**

**Bankruptcy No. 99–00212.**
**Adversary No. 99–00124.**

United States Bankruptcy Court,
D. Montana.

March 15, 2001.

John M. Shontz, Helena, MT, for Plaintiff.

Lisa Swan Semansky, Great Falls, MT, for Defendants.

## ORDER

RALPH KIRSCHER, Bankruptcy Judge.

Plaintiff originally filed this Adversary Proceeding in the United States Bankruptcy Court for the District of Idaho on April 16, 1999 against Defendants Raymond Wishman and April Wishman. On June 30, 1999, the Honorable Terry L. Myers, a U.S. Bankruptcy Judge for the United States Bankruptcy Court for the District of Idaho, signed an Order transferring venue of this proceeding to this Court. The Bankruptcy Clerk for this Court opened a file in this proceeding on October 27, 1999.[1] On March 10, 2000, the clerk requested an updated status of this proceeding from the attorneys of record. On March 29, 2000, after receiving a response from Plaintiff's attorney, this Court issued a Notice of Intent to Dismiss Adversary Proceeding to the parties in interest and their attorneys. Also, on March 29, 2000, the clerk requested and subsequently received from the U.S. Bankruptcy Court for the District of Idaho certified copies of the pleadings previously filed in this proceeding. This court held a hearing, after notice, on May 16, 2000, to consider Defendants' renewed motion to dismiss. This court entered an Order, dated May 17, 2000, granting the Defendants' motion, but giving Plaintiff fifteen days to file "an amended complaint joining . . . all persons

in whose absence complete adjudication of this quiet title action cannot be accorded, and to proceed with service of process of the amended complaint on all parties."

The Plaintiff, through his new attorney, John M. Shontz, filed consolidated motions which were denied by an Order, dated June 6, 2000. Plaintiff was directed to filed an amended complaint within ten days joining all necessary party-defendants. Plaintiff filed an amended complaint on June 16, 2000. Upon the Defendants filing answers to the amended complaint, a trial on all issues was held on October 10, 2000.

Plaintiff, W. Eugene Strate ("Gene") appeared, testified was represented by John M. Shontz. Defendants Raymond Wishman ("Ray") and April Wishman ("April") appeared *pro se* and testified. Defendant Allen Ray Wishman ("Allen") appeared, testified, and was represented by Lisa Swan Semansky. Defendant Terri Lynne Wishman McIntyre ("Terri") did not appear, but was represented by Lisa Swan Semansky. Channing Hartelius ("Hartelius"), attorney to Raymond and April Wishman prior to 1988, testified. The parties stipulated that the following exhibits were admitted: Plaintiff's Exhibits ("Ex.") 1 through 20, inclusive; Wishmans' Exhibits ("Ex.") A through CCC, inclusive; and Wishman and McIntyre Exhibits ("Ex.") A-2, B-2a, B-2b, B-2c, B-2d, B-2e, B-2f, B-2g, C-2, D-2, E-2. At the close of the evidence, the Court granted the parties until October 30, 2000, to submit simultaneous briefs, and took the matter under advisement.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 157. This is a core proceeding to recover property and to determine interests in alleged property of the estate pursuant to 28 U.S.C. § 157(b)(2)(E). State law governs the title issues not dealt with by federal statutes. *Butner v. U.S.,*

---

1. The original adversary proceeding case file was never received by the Clerk of the U.S. Bankruptcy Court of the District of Montana.

The Clerk secured a copy of the adversary proceeding from the District of Idaho's website.

440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

### FACTS

Hilda F. Wishman, mother to Ray, conveyed property to a family corporation known as Wishman Farms, Inc. Ex. L. According to an Agreement to issue Stock and Note, dated December 1, 1973, Hilda F. Wishman conveyed 1440 acres of agricultural land to Wishman Farms, Inc. and received 1000 shares and a note from the corporation for $43,000.00. Ex. G. A schedule of Shareholders for Wishman Farms, Inc., dated December 15, 1975, identifies each shareholder, the number of shares held and the date of share issuance. Ex. E–2, F. This schedule confirms that Ray, through a trust created for his benefit, received 65 shares on December 2, 1973, and 17 shares on February 1, 1974, for a total of 82 shares. April, Ray's wife, received, outright and free of trust, 17 shares on February 1, 1974. Allen and Terri, children of Ray and April, each received, outright and free of trust, 17 shares on February 1, 1974.[2] The evidence is unclear as to whether Hilda F. Wishman gifted her 1000 shares to family members or whether the corporation issued additional shares to family members in addition to the 1000 shares originally transferred to Hilda F. Wishman. The schedule of shareholders, Ex. F., identifies only 1000 shares and does not list Hilda F. Wishman. At the time the shareholder schedule was prepared on December 15, 1975, the corporation acquired 136 shares from Ray's two sisters and their families. Ex. H, N, O.

For a numerous reasons which were not specifically identified, Ray testified that the shareholders of the family corporation starting fighting and the personal relationships disintegrated. Hartelius testified that the disintegration of the family relationships caused the transaction identified in the Memorandum to be a "hard fought, complicated, miserable experience, to say the least." He further testified that the purpose was to extinguish all interests of the Ray Wishman family in Wishman Farms. On April 12, 1985, the Ray Wishman family, including Ray, April, Allen and Terri, who owned shares in Wishman Farms, Inc., agreed to sell their 133 shares to the corporation and to Ray's two sisters-in-law pursuant to a Memorandum. Ex. A–2, I. An ambiguity exists in the Memorandum in sections 1, 2.d., 9 and Exhibits B and F to the Memorandum. Section 1 states that "Seller agrees to sell all of their interest in the Witt Place described in Exhibit "B" attached hereto, one-half to Mary Wishman and one-half to Ila Wishman, and Mary Wishman and Ila Wishman agree to purchase same." Section 2 states: "2. BUYERS agree to pay the following: * * * d. 40 acres described in Exhibit "B" attached hereto, which is generally the 40 acres surrounding Ray Wishman house and which includes no other buildings (other than the pump house) or improvements and subject to reasonable roadway, water and utility easement and which grants joint water rights to BUYERS." Section 9 states: "... SELLER shall have no interest in any crops, grain, land, equipment and assets in WISHMAN FARMS, INC. and WISHMAN BROTHERS, except as specifically transferred to him under Section 2 of this Agreement." Exhibit A to the Memorandum is entitled *"SELLERS"* and contains the following information:

RAY WISHMAN FAMILY, as Sellers, of all of their stock in Wishman Farms, Inc.

(Representing a total of 133 shares):

Randy Luedeman and Raymond Wishman, Co–Trustees of the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73

Eighty-two (82) Shares

April Wishman

---

**2.** On February 1, 1974, Allen and Terri were both minor children at the time of this stock transfer. Allen was born on September 13, 1972. Terri was born on June 8, 1971.

Seventeen (17) Shares

Allen Wishman

Seventeen (17) Shares

Terri Wishman

Seventeen (17) Shares

RAY WISHMAN and APRIL WISHMAN, individually as Sellers of all of their interest in the Witt Property and Contract for Deed, a description of which is founded in Exhibit F

Sellers must present at closing a guardianship/conservatorship approval by a Court of compentent [sic] jurisdiction authorizing the sale of Allen and Terri's stock.

Exhibit B to the Memorandum is entitled *"THE RAY WISHMAN PROPERTY."* It provides a legal description for approximately 40 acres which matches the legal description on Exhibit 20, which is the deed from Wishman Farms, Inc. to Ray and April Wishman, dated May 6, 1988. Ex. B. to the Memorandum states, in pertinent part, "This property includes no buildings other than Ray Wishman's house and the pump house." Ex. F to the Memorandum is entitled *"WITT PLACE"* and states, "As referred to in Section Four of the Agreement and in Exhibit A of the Agreement." Based on the testimony and a review of the Exhibits, the Ray Wishman family lived on property originally owed by Hilda F. Wishman, which was conveyed to the family corporation. The Memorandum allowed the Ray Wishman family to sell all stock interests in the Wishman Farms, Inc. and in the Witt Place in consideration of receiving substantial cash, the 40 acres surrounding the family home, identified personal property and grain. The forty acres parcel was conveyed by a Warranty Deed to Joint Tenants with Right of Survivorship from Corporation, dated May 6, 1988, and recorded June 3, 1988, with the Chouteau County Clerk and Recorder as document number 423632 in Book F 21–88 of Deeds. This Warranty Deed contains

the following statement: "The purpose of this Deed is to replace a previous Deed dated October 25, 1985, between the above parties, which has not been recorded, it being the purpose of this document to reflect the true ownership of this property." Ex. 20. April testified that she did not record the 1985 Deed [3] as it did not have Allen and Terri's names on it. Ray and April testified that the 1988 Deed was prepared and recorded by Wishman Farms, Inc. without their knowledge. Hartelius testified that the omission of naming Ray and April as conservators for Terri and Allen on the Deed may have been a mistake.

The Honorable Truman G. Bradford, District Court Judge for the District Court of the Eighth Judicial District of the State of Montana in and for the County of Cascade, on June 10, 1985, entered in Case No. BDP–85–135, encaptioned *In the Conservatorship of Allen Ray Wishman and Terri Lynn Wishman, Minor Children,* an Order/Decree entitled "Appointment of Conservator." Ex. C–2, J. Raymond and April Wishman were appointed conservators by said Decree for both minor children. Pursuant to such Decree, the conservators are "authorized to sell the children's stock in Wishman Farms, Inc. upon the terms as have been agreed for the sale of such shares of stock of Wishman Farms, Inc., and the Court approves and authorizes such sale and invests [conservators] with the power to sign all necessary documents to complete such sale." Ex. J., ¶ 2., p. 2., of Decree. Additionally in paragraph 3 of such Decree, the conservators were authorized to "receive the proceeds from the sale and hold the proceeds for the above named minor children in accordance with applicable law." Ex. J.

Contemporaneously with the execution of the Ex. I, J, the parties to the Memo-

---

**3.** The 1985 Deed was not introduced into evidence and conflicting testimony exists as to the Grantees' names set forth on it.

randum, signed notes, mortgages and assignments complying with the provisions of the Memorandum. Ex. B–2a, B–2b, B–2c, B–2d, B–2e, B–2f, B–2g, K. The holders of the notes, the mortgagees and the assignee in the documents within Ex. K are: Ray Wishman, April Wishman, Allen Wishman, Terri Wishman, Raymond Wishman and Randy Ludeman [4], Co-trustees of the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73 ("Gift Trust").[5] On August 12, 1988, and in response to the 1988 Deed, Ex. 20, and for clarification, Hilda F. Wishman prepared and signed an affidavit discussing the 1985 Memorandum, the conservatorship and the anticipated distributions of money and property to the Ray Wishman Family. Ex. D–2, L. The Affidavit was filed with the Clerk of District Court [6]

The Internal Revenue Service, Department of Treasury ("IRS"), on September 17, 1989, sent, by certified mail, a notice of deficiency upon Ray and April. Ex. 1, 2.[7] In response to this notice of deficiency, Ray and April mailed to the IRS a letter, dated December 27, 1989, questioning what statutory authority within the Internal Revenue Code imposes a liability upon Ray and April to file an individual income tax return. Ex. AA. Numerous attachments from independent sources supporting Ray and April's position were submitted with Ex. AA. The IRS responded to such correspondence by letter Ex. 3, dated January 3, 1990, relying upon the contents of the notices of deficiency, Ex. 1, 2, for the imposition of any tax liability for the tax years of 1985, 1986, and 1987. Ex. 1, 2 informed Ray and April that if they contested the deficiency identified in the notice, they had 90 days from September 27, 1987, to file a petition before the U.S. Tax Court for a redetermination of the deficiency. Ex. 3 informed Ray and April that if "a petition was not filed by [them] within [90 days] the taxes reflected in the notice will be assessed." The letter also contained other remedies.

In June 1990, Ray and April signed and delivered promissory notes to Allen and Terri in the respective amounts of $29,827.81 to be paid in money or property, upon demand. Notices of Federal Tax Lien Under Internal Revenue Laws ("NFTLs"), dated September 21, 1990 and recorded on September 24, 1990 with the Clerk and Recorder of Chouteau County, Montana as Document Nos. 428366 and 428367, identified unpaid individual income taxes for Ray and April for years 1985, 1986 and 1987, which were assessed on March 15, 1990 in the respective amounts of $52,270.34 and $54,428.01. Ex. 4. Such NFTLs were subsequently corrected in 1996. On March 25, 1993, the IRS mailed, by certified mail, a Final Notice (Notice of Intention to Levy), notifying Ray that levy and seizure of assets may occur if the assessments for years 1985, 1986 and 1987 were not paid. Ex. 6. A similar notice was mailed, by certified mail, to April. Ex. 7.

By Quitclaim Deed, dated July 11, 1993, and recorded July 29, 1993, in the Chou-

---

**4.** Several exhibits inconsistently spell "Ludeman" as "Ludeman".

**5.** The Court notes that on the notes, mortgages, and assignment the following language has been crossed out: "Raymond Wishman and Randy Ludeman, Co-trustees of the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73." No explanation exists in the evidence as to when the above language was crossed-out, whether such interlineation occurred prior to or after such signature and recording and why such interlineation occurred. More specifically, no evidence exists as to whatever happened to the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–

5–73 and why the Wishman Farms, Inc. Deed in 1988 made no reference to such Trust.

**6.** The testimony and the exhibit are unclear as to whether it was recorded in the Clerk of District Court for Cascade County or for Chouteau County.

**7.** Neither copy of the exhibits have attached as noted on page 1, the details contained on page 2, specifying the tax year and the reason for a deficiency. No evidence exists that such details on page 2 were not included with the original notice of deficiency to Ray and April.

teau County, Montana records, Ray and April conveyed to Terri an undivided one-quarter interest in the 40 acres described above.[8] Ex. P. By Quitclaim Deed, dated July 11, 1993, and recorded July 29, 1993, in the Chouteau County, Montana records, Ray and April conveyed to Allen an undivided one-quarter interest in the 40 acres described above.[9] Ex. Q. On May 9, 1994, Ray and April filed Articles of Organization for Promise Land Business Organization, a Montana business trust ("Promise Land Trust") with the Montana Secretary of State. Ex. R, S. By Quitclaim Deed, dated April 29, 1994, and recorded May 6, 1994, in the Chouteau County, Montana records, Ray and April conveyed to Promise Land Trust an undivided one-half interest in the above described 40 acres. Ex. U. After reaching the ages of majority, according to Ray's testimony, Terri and Allen contributed labor toward the work associated with the 40 acres and have partially contributed toward the real property taxes.

On June 21, 1994, the IRS prepared a Notice of Sealed Bid Sale involving Ray and April wherein it solicited bids on the above described 40 acres for the sale of whatever interest Ray and April may have in said property.[10] Ex. V, 9. This Notice was mailed to interested parties and published in a newspaper and posted in several public places. Ex. V, W, 9 (p. 4), 10, 11. Ray, April, Allen and Terri contested the Notice of Sale; Ray and April disclaimed any interest in the property and Allen and Terri claimed an interest in the property. Ex. X, Y. Ex. 9 also includes a Sealed Bid for Purchase of Seized Property from Carol A. Hoerner, dated July 16, 1994, a Notice of Encumbrances Against and Interests in Property Offered for Sale, dated June 21, 1994, and copies of cashier's check for the bid price.

The IRS issued a Record of Seizure and Sale of Real Estate, dated July 27, 1994, involving Ray and April. Ex. 10, 11. Certificates of Sale of Seized Property were issued by the IRS on July 26, 1994. Ex. 12, 13. After the redemption period (180 days) passed, the IRS issued Deeds of Real Property to Carol A Hoerner, on January 19, 1995 for Ray and April's respective interests, which were recorded in Chouteau County, Montana. Ex. 14, 15.

In 1994, Ray and April filed a complaint in the United States District Court for the District of Montana, Great Falls Division, Case No. CV–94–067–GF. The Honorable Paul G. Hatfield, U.S. District Judge, issued a memorandum and order on April 4, 1995 and the Clerk pursuant to the order issued a Judgment dismissing the complaint. Ex. 16, 17. Ray and April appealed the Judgment to the Ninth Circuit Court of Appeals. On April 12, 1996, the Ninth Circuit issued an Memorandum affirming the District Court Judgment. Ex. 18. The Ninth Circuit Court of Appeals specifically addressed Ray and April's issue of whether any statute requires them to file federal income tax returns and concluded such contention, among others, were without merit as the Internal Revenue Code and case law provided the necessary authority.

On January 20, 1996, Carol A Hoerner and her husband, Ken Owens, conveyed the above described 40 acres to W. Eugene Strate, whose sister was previously married to Ray's deceased brother, Verne. Ex. 19. Ray and April continue to live on the above described 40 acres. Gene testified that he has paid property taxes on the property for several years; Ray testified

---

8. On July 11, 1993, Terri was 22; she turned 18 on June 8, 1989.

9. On July 11, 1993, Allen was 20; he turned 18 on September 13, 1990.

10. This property had been previously noticed for sale in July 1993 and publication for sale previously occurred in August 1993, although no direct evidence specifically addresses the July 1993 notice or the August 1993 publication except indirect reference on Ex. 10 and 11 and the handwritten notes on page 2 of Ex. DD.

that his family has paid taxes on the property for some years. Ex. Z. Gene testified that he understood that the Chouteau County Treasurer may have returned or remitted some or all of Wishman's tax payments to the Wishmans.

## DISCUSSION

The issues and facts in this case unfortunately arose and started developing in the early 1970's before the parties and their attorneys could fully appreciate the importance of the provisions contained in several documents. Now, nearly thirty (30) years later, an interpretation by this court of the exhibits, the documents, the law and the testimony may have profound consequences on several of the parties.

The real property which is the subject of this litigation comprises forty (40) acres and is located in Chouteau County, Montana and is more particularly described as follows:

Township 22 North, Range 13 East, M.P.M., Section 17, S1/2S1/2E1/2E1/2N E1/4, N1/2E1/2E1/2SE1/4, N1/2S1/2E1/2 E1/2SE1/4, containing approximately 40 acres, more or less, according to Plat No. 127c, Document No. 411709, filed with Chouteau County Clerk and recorder on 6–27–85 at 2:00 p.m.

Property contains a 1970 Golden Star 25x58 Mobile Home on a permanent foundation and a 44x50 metal shed.

The answers to the following issues will primarily govern the outcome in this case:

1. Who owned the above described 40 acres at the time the unpaid taxes were assessed?

2. Who owned the above described 40 acres at the time the Notice of Federal Tax Lien was filed and recorded with the Chouteau County Clerk and Recorder?

3. Whose property interest, if any, was sold by the IRS?

4. Who currently owns the above described 40 acres?

As noted above, the Sellers identified in Exhibit A of the Memorandum, Ex. A–2, I, were Randy Luedeman and Raymond Wishman, Co–Trustees of the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73, April Wishman, Allen Wishman, and Terri Wishman. This same exhibit required the Sellers to "present at closing a guardianship/conservatorship" approved by the State District Court "authorizing the sale of Allen and Terri's stock." Ex. A–2, I. On June 10, 1985, the State District Court entered a Decree, Ex. C–2, J, appointing Raymond and April A. Wishman as conservators for their two minor children, Allen and Terri. Pursuant to Mont.Code Ann. ("MCA") § 72–5–425(1), "[t]he appointment of a conservator vests in him title as trustee to all property of the protected person presently held or thereafter acquired ...." *See In re King*, 234 B.R. 515, 517 (Bankr.D.N.M.1999) (In interpreting an identical statute, the Court concluded "a conservator is vested with title as trustee."). "[A] conservator acts as a fiduciary. As such, he is required to observe the stringent standards applicable to trustees. Section 72–5–423, MCA." *Matter of Estate of Clark*, 237 Mont. 179, 772 P.2d 299, 302 (Mont.1989). "The purpose of a conservatorship is to preserve the property of the protected person." *Id.* To this end, the Decree, Ex. C–2, states: "The sale of the childrens' shares of stock needs to be court authorized and there needs to be the appointment of a conservator for these children to care for the sales proceeds belonging to the children." The Decree, Ex. C–2, J, pp. 2–3, contains the following two paragraphs:

2. Petitioners, on behalf of their above named minor children, are authorized to sell the children's stock in Wishman Farms, Inc. upon the terms as have been agreed for the sale of such shares of stock of Wishman Farms, Inc., and the Court approves and authorizes such sale and invests Petitioners with the power to sign all necessary documents to complete such sale.

3. Petitioners shall receive the proceeds from the sale and hold the proceeds for the above named minor children in accordance with applicable law.

Although the word "proceeds" might suggest "cash", clearly the Memorandum, Ex. A–2, I, specifically described that a portion of the consideration for the sale of stock would be the transfer of 40 acres to the Sellers. In its findings of fact, the State District Court noted that the minor childrens' family farm corporate stock was being sold and that certain proceeds would belong to such minors. The term "proceeds" can be cash or noncash and includes "whatever is received upon the sale, exchange, ..., or other disposition of [property]." MCA § 30–9–306(1).

Chronologically, the Memorandum, Ex. A–2, I, was dated April 12, 1985. The conservatorship decree was dated June 10, 1985. Some of the documents required under the Memorandum were dated June 15, 1985, namely: notes, mortgages, and assignments, Ex. K, B–2a, B–2b, B–2c, B–2d, B–2e, B–2f, B–2g. According to Ex. P, Q, a plat for the 40 acres was filed with the Chouteau County Clerk and Recorder on June 27, 1985. According to the deed from Wishman Farms, Inc. to Raymond and April Wishman, dated May 6, 1988, a previous deed for the transaction was dated October 25, 1985. April testified that she had not recorded the earlier deed because it omitted the names of Allen and Terri and the 1988 Deed had been prepared, signed and recorded by representatives of Wishman Farms, Inc. without the approval, consent or knowledge of Ray and April.[11] An unrecorded deed is valid between the parties and any person who has knowledge of it. MCA § 7021–202. Con-

sequently, as early as October 25, 1985 and as late as May 6, 1988, a deed between some of the parties to the 1985 transaction existed and was ultimately recorded on June 6, 1988. Neither the exhibits nor the testimony clarifies or explains what happened to the Gift Trust created by Ray's mother for his benefit and identified in the following language contained in the Memorandum, Ex. A–2, I, and signed notes, mortgages and assignments, Ex. K, B–2a, B–2b, B–2c, B–2d, B–2e, B–2f, B–2g: "Randy Ludeman and Raymond Wishman, Co–Trustees of the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73." As the 1988 Deed, only refers to Ray and April, individually, an unanswered issue remains as to the status of the trust created on behalf of Ray. The 1988 Deed conveyed an interest to April, and an interest to Ray and April, as trustees for Terri and Allen through the conservatorship. However, no evidence exists clarifying what interest the Gift Trust received through the 1988 Deed consistent with the provisions of the Memorandum or whether the Gift Trust had been terminated prior to the execution and recording of the 1988 Deed with all trust assets being distributed to Ray, individually. These subsequent documents are inconsistent with the original Memorandum, and suggest either an ambiguity or a mistake. At this time no clear and convincing evidence provides the requisite proof to allow this Court to reform the 1988 Deed on the ground of mistake. See *Laundreville v. Mero*, 86 Mont. 43, 281 P. 749, 752–53 (1929). All the current record establishes is that some interest passed to Ray and April from Wishman Farms, Inc. through the 1988 Deed.[12]

---

**11.** The Court notes that the Warranty Deed, dated May 6, 1988, was notarized by Donald LaBar, of the law firm of Church, Harris, Johnson & Williams, who served as attorneys for Wishman Farms, Inc. Such deed after recording was returned to said law firm.

**12.** According to the Memorandum, Ex. I, the Gift Trust for Raymond held 82 shares in Wishman Farms, Inc. April, Terri and Allen each held 17 shares. Total shares held in Wishman Farms, Inc. totaled 133 shares. Based upon this allocation of shares in relation to the total produces the following percentage ownerships: Gift Trust holds 61%; April holds 13%; Terri holds 13%; and Allen holds 13%. (Due to rounding and so the total percentage adds to 100%, 1% has been subtracted from the Gift Trust).

After discussing the above family transaction, the Court now considers the federal tax issues pertinent in this case. On September 27, 1989, the Internal Revenue Service mailed to Ray and April Notices of Deficiency, Ex. 1, 2. As noted earlier, page 2 to said exhibits was not attached to the exhibits introduced at the time of trial. This page for each exhibit provided the details and the calculation as to how the deficiency was calculated pursuant to applicable statute and for particular years. This notice was submitted pursuant to IRC § 6212(a). Upon receipt of this notice, the Ray and April had 90 days to file a petition with the United States Tax Court for a redetermination of the deficiency. During that time, generally no assessment, no levy and no other collection proceeding occurs. *See* IRC § 6213(a). On January 3, 1990, the Internal Revenue Service mailed a letter, Ex. 3, to Ray and April responding to their letter of December 27, 1989, Ex AA, and informing them that if a petition to the Tax Court had not been filed the taxes identified on the notice would be assessed. *See* IRC § 6213(c). Between December 27, 1989 and March 15, 1990, the Internal Revenue Service apparently proceeded to assess the taxes under IRC § 6203 within the requirement time periods of IRC § 6501(a) and provided notice and demand of payment of the tax pursuant to IRC § 6303. Sixty days may be added to the period of limitations imposed under IRC § 6501(a) pursuant to IRC § 6503(a). Apparently, Ray and April failed to pay the assessed tax after notice and demand.[13]

On September 24, 1990, the Internal Revenue Service filed NFTLs, Ex. 4, against Ray and April with the Chouteau County Clerk and Recorder identifying that federal income taxes for the years of 1985, 1986 and 1987 had not been paid and had been assessed on March 15, 1990. A tax lien automatically arose as of the date of assessment which, in this case, was March 15, 1990, upon all real and personal property and all rights to property owned by Ray and April once they failed to pay the assessed tax. *See* IRC § 6321 and IRC § 6322. This tax liens, however, were not valid against certain persons until the NFTLs were filed with the proper governmental entity. *See* IRC § 6323. Further, such tax lien attached only to the interest owned by Ray and April. The following statement from *Magavern v. U.S.*, 550 F.2d 797, 800 (2nd Cir.1977), *cert. den.* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977), is instructive:

> It is long-established, and conceded by both parties to this case, that in asserting its federal tax lien, the Government must look to state law for a determination of what legal rights and interests, if any, comprise "property and rights to property" to be attached. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). As the Supreme Court stated in *Aquilino:*
>
> > The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." *Morgan v. Commissioner of Internal Revenue,* 309 U.S. 78, 82 (60 S.Ct. 424, 84 L.Ed. 585).
> >
> > 363 U.S. at 512–13, 80 S.Ct. at 1280 (footnote omitted).

---

**13.** The actual notice of assessment and notice and demand have not been introduced as evidence; however, other exhibits indicate such notices were submitted to Ray and April.

"We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58, 120 S.Ct. 474, 481, 145 L.Ed.2d 466 (1999). "[T]he IRS is not given the power to levy on property in the hands of the taxpayer beyond the extent of the taxpayer's interest in the property." *Slodov v. United States*, 436 U.S. 238, 256, 98 S.Ct. 1778, 1790, 56 L.Ed.2d 251 (1978). As noted, Ray and April, as conservators for Terri and Allen, held the conservatorship property in trust for Terri and Allen. This trust was created on June 10, 1985, nearly five years prior to the assessment of tax against Ray and April. After Terri and Allen attained the age of majority, Ray and April conveyed on July 11, 1993, pursuant to MCA § 72–5–429(1), a percentage interest [14] in the real property to each child. Ex P and Q. The IRS liens existed against Ray and April on July 11, 1993; however, the liens did not attach to the conservatorship property held in trust by Ray and April. Generally, the trust property is protected from a trustee's federal tax lien if the trustee is only serving as a trustee and is not also the grantor and beneficiary or is not the holder of a general power of appointment. Starezewski, 638 T.M. Federal Tax Collection Procedure (Tax Management Portfolios, Bureau of National Affairs, Inc. 1995). *Markham v. Fay*, 74 F.3d 1347, 1356 (1st Cir.1996). *United States v. Ritter*, 558 F.2d 1165, 1167–68 (4th Cir.1977). Unfortunately, no exhibits and testimony establish how Ray and April determined that Terri and Allen each should receive one-quarter interests in the 40 acres. The percentage ownership in the shares held by Terri and Allen in Wishman Farms, Inc. does not equate to such interest, unless Ray and April had

not previously distributed a portion of the cash proceeds to Terri and Allen to which they were entitled. Ray and April did execute and deliver to Terri and Allen several promissory notes, Ex. M. No evidence, however, indicates whether these notes were ever paid.

As discussed above, no evidence exists as to whatever happened to the Gift Trust created by Hilda Wishman for her son, Raymond (Ray). Based upon the interlineations on the promissory notes, mortgages and the assignment, the Court could determine that the Gift Trust was terminated and its assets were distributed to Ray sometime prior to June of 1985. If the assets were distributed to Ray in 1985, then the 1988 Deed would have conveyed a percentage interest in the 40 acres to him. The 1988 Deed did convey a percentage interest to April.

Based upon the foregoing discussion, answers to the initial four questions follow. On March 15, 1990, the date of tax assessment, April Wishman owned a percentage interest in the 40 acres. Ray and April, as trustees, held a percentage interest in the 40 acres for the benefit of Terri and Allen. Without further evidence as to the status of the Gift Trust, this Court will reserve further decision as to the percentage interest held by either the Gift Trust or Ray.

On September 24, 1990, the Internal Revenue Service filed with the Chouteau County Clerk and Recorder, the NFTLs against Ray and April. On this date, April owned a percentage interest. Ray and April, as trustees, held a percentage interest in the 40 acres for the benefit of Terri and Allen.

On July 20, 1994, the Internal Revenue Service sold the above described 40 acres. The Sealed Bid Sale notice, Ex. 9, issued by the Internal Revenue Service, on June 21, 1994 contained the following provisions:

Title Offered:

14. The one-quarter percentage interest stated in the deeds, without further evidence, is not consistent with the percentage interest held

by each child in Wishman Farms, Inc. *See* n. 12.

Only the right, title, and interest of Raymond Wishman and April Wishman in and to the property will be offered for sale. If requested, the Internal Revenue Service will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold. (See "Nature of Title" below for further details.)

Nature of Title:

The right, title, and interest of the taxpayer (named Above) in and to the property is offered for sale *subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to the lien of the United States.* All property is offered for sale "where is" and "as is" and without recourse against the United States. No guaranty or warranty, expressed or implied, is made as to the validity of the title, quality, quantity, weight, size, or condition of any to the property, or its fitness for any use or purpose.

The Notice of Encumbrances Against or Interests in Property Offered for Sale, Ex. 9, p. 4, states: "As to this date [June 21–1994], the following are the encumbrances against or interests in the property (as described in the Notice of Public Auction or Notice of Sealed Bid Sale) that was seized for nonpayment of Internal Revenue taxes due from: Raymond Wishman and April Wishman. Some of these encumbrances or interest may be superior to the lien of the United States." The interests for Terri, Allen and Promise Land Trust are listed based upon the Quit Claim Deeds recorded on July 29, 1993 and May 6, 1994. Ex. P, Q, U.

The Internal Revenue Service issued Certificates of Sale of Seized Property to Carol A. Hoerner, on July 26, 1994. Ex. 12, 13. On January 19, 1995, the Internal Revenue Service issued two Deeds for the 40 acres to Carol A Hoerner after the 180 day redemption period expired pursuant to IRC § 6337. Ex. 14, 15. These Deeds respectfully stated: "[The Internal Revenue Service] does hereby remise, release, and forever quitclaim unto CAROL A.

HOERNER, her heirs and assigns forever, all right, title and interest, if any, of RAYMOND WISHMAN, at such time as the liens of the United States attached thereto . . . ." Ex. 14. "[The Internal Revenue Service] does hereby remise, release, and forever quitclaim unto CAROL A. HOERNER, her heirs and assigns forever, all right, title and interest, if any, of APRIL WISHMAN, at such time as the liens of the United States attached thereto . . . ." Ex. 15. The Internal Revenue Service provided no warranties with the respective Deeds. *See* MCA §§ 70–20–301 and 30–11–109. No encumbrancers or interest holders identified in Ex. 9, p. 4., redeemed the property from the tax sale. April did not redeem her interest in the property from the tax sale.

 The Quitclaim Deed from Ray and April to Promise Land Trust on May 6, 1994, Ex. U, conveyed whatever interest they held, subject to any liens. The federal tax liens attached upon any interest they held in the 40 acres from the date of assessment on March 15, 1990. Any transfer of their interests in such property after March 15, 1990, included the federal tax liens. *United States v. Bess,* 357 U.S. 51, 58, 78 S.Ct. 1054, 1059, 2 L.Ed.2d 1135 (1958); *Lapp v. United States,* 316 F.Supp. 386, 388 (S.D.Fla.1970). The Internal Revenue Service is authorized to seize and sale tax liened property "even if it has been sold to a third party." *Han v. United States,* 944 F.2d 526, 529 (9th Cir.1991) and 26 C.F.R. 301.6331–1 (2000). Consequently, whatever interest Promise Land Trust received from Ray and April through Ex. U was foreclosed through the tax sale given its failure to redeem.

The sale did not include the percentage interests held by Terri and Allen derived through the Quitclaim Deeds recorded in 1993. These Deeds represented the percentage interests held by Ray and April, as trustees, on behalf of Terri and Allen through the conservatorship. The percentage interest of Terri and Allen passed to the conservatorship in 1985. The interests held by Ray and April, as trustees, on

behalf of Terri and Allen passed prior to the tax assessment and therefore such interests were not subject to the tax lien. *Blevins v. Proprietor Property Trust,* 884 P.2d 861, 863 (Okla.Ct.App.1994) *citing St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1301 (8th Cir.1980)..

Terri and Allen request this Court to impose a constructive trust pursuant to MCA § 72–33–219, as interpreted by *In re Marriage of Moss,* 1999 MT 62, 293 Mont. 500, 977 P.2d 322, (1999). In concluding that the percentage interests were held by Ray and April, as trustees, on behalf of Terri and Allen through the conservatorship, it is unnecessary to impose such a constructive trust.

An argument arose concerning whether Ray and April acquired ownership of this property through adverse possession. In reviewing the evidence and testimony, the Court finds that Ray and April have not paid the assessed real property taxes on the property for the requisite five years. *See* MCA § 70–19–411.

### CONCLUSION

The Court determines that April's percentage interest, whether fifty percent, twenty-five percent, or thirteen percent, in the 40 acres was sold to Carol A. Hoerner and her assigns. An additional evidentiary hearing must be held to determine what percentage interests Terri and Allen received through the conservatorship. Should they each receive twenty-five percent, thirteen percent or some other percentage? Furthermore, additional evidence must be presented concerning when distributions of property occurred from the Hilda F. Wishman Gift Trust for Raymond, U/A/D 10–5–73. Did such distribution occur prior to 1988? Or Prior to 1990? Lastly, an evidentiary hearing is necessary to determine all percentage interests in the 40 acres, including Gene's, and possibly requiring reformation of the recorded deeds.

IT IS HEREBY ORDERED that an additional evidentiary trial in this adversary proceeding addressing solely the above remaining questions as to percentage ownership interests and distribution from the Gift Trust shall be held on April 20, 2001, at 9:00 o'clock a.m., or as soon thereafter as counsel can be heard, in the 3RD FLOOR COURTROOM, POST OFFICE BUILDING, 215 1ST AVENUE NORTH, GREAT FALLS, MONTANA and at least five (5) business days before the trial, each party shall file with the Court and serve upon opposing counsel or parties:

(a) a list identifying by name and address all prospective witnesses, including specifying all expert witnesses;

(b) a list of all proposed exhibits, together with a copy of each exhibit duly marked and identified as the party's proposed exhibit (by number for the Plaintiffs and by letter for the Defendant).